David H. Brind, J.
The four defendant refuse collectors, who collect and haul trash and refuse in the City of Geneva, have asked this court to declare invalid and unconstitutional an ordinance adopted by the City Council of the City of Geneva relating to the licensure and regulation of the collection and disposal of trash and other deleterious material generated within the city.
*989 The city ordinance in question is chapter 90 entitled: "Refuse Collection”. The purpose of the ordinance stated in section 90.1 is: "By the adoption of this Chapter, the City Council of the City of Geneva, for the promotion of the health, safety and general welfare of the City of Geneva and its inhabitants, declares its intent to regulate collection and disposal of refuse and bulk refuse within the City of Geneva”.
The ordinance further defines the terms "refuse” and "refuse collector” in section 90.2 as follows: "1. 'Refuse’ shall mean and include paper, rags, glass, metal, machines, and large appliances, trash and other discarded articles of similar nature.” "3. 'Refuse Collector’ shall mean any person, firm, corporation or legal entity carrying on the business of receiving, collecting, transporting or disposing of refuse for hire within the City of Geneva.”
Article III (§§ 90.21-90.25) provides for the licensing of refuse collectors and the fees to be paid therefor and concerns the types of vehicles to be used and other conditions.
Article IV (§ 90.40) is the primary provision that the defendants have asked this court to declare invalid and unconstitutional. This section states as follows: ’’Disposal of trash at Ontario County Landñll Site All ashes, rubbish and trash generated in the City of Geneva from residential and commercial premises shall be delivered for disposal to the Ontario County Landfill Site in the Town of Seneca or at such other landfill site as may be hereinafter designated by the City of Geneva. Industrial waste generated in the City of Geneva shall also be disposed of at the Ontario County Landfill Site if such waste is acceptable for disposal in accordance with the Ontario County Landfill Site regulations.” Article V (§ 90.50) states that a "violation of this Chapter shall constitute an offense punishable by a fine not exceeding $250.00 or by imprisonment not exceeding fifteen days, or both. Each separate offense shall constitute a separate additional violation.”
The defendants do not attack the provisions of the ordinance concerning licensing or general regulation of trash pickup within the corporate limits of the city. The defendants do, however, strongly attack the power of the city to determine by ordinance where that trash must be deposited when transported outside of its corporate boundaries, as herein provided.
Before this ordinance was adopted, the city entered into a contract with the County of Ontario providing for the use by *990 the city for the purpose of disposing of its refuse, a sanitary landfill site known as "Ontario County Landfill Site 1”, located in Flint, New York, approximately seven miles outside the corporate limits of the city. Such contract between the city and the county commenced February 1, 1975 and is to terminate on July 31, 1978. By section 2 of such contract, the city agreed to dispose of 2,000 cubic yards of material each month at the county landfill or in failing to do so, the city would pay the difference between the deposits actually made and the said 2,000 cubic yards whenever the total deposits for the month shall be less than 5,000 cubic yards from all sources. The sum of $1 is established by the contract as the charge for each cubic yard.
Each of the defendants has for past years primarily been using another sanitary landfill located approximately one mile from the city limits.
The city environmental health technician has laid informations before this court charging each of the four defendants with violating section 90.40 of the refuse collection ordinance, and subsequent thereto, a summons was issued by this court to each of the defendants to answer such complaint.
As a threshold issue the defendants move to strike down this ordinance provision as unconstitutional and invalid.
As far as the court can determine, this issue appears to be one of first impression in this State. The only annotation remotely similar is a 1971 informal opinion of the State Attorney-General which stated that the City of Gloversville could not adopt an ordinance regulating the use of a dump owned by that city, but located outside its corporate limits in absence of express legislative grant. Such opinion, although not binding herein, can be easily distinguished on the ground that the type of "regulation” involved therein referred to the use of a city-owned dump, which is an entirely different matter than the instant case which involves refuse disposal of trash, etc., generated within the city.
The City of Geneva is a creature of the State to the extent necessary to discharge the functions assigned to it by the State. The city acts with the right and power of the State, subject to constitutional and statutory limitations (People v City of Schenectady, 186 Misc 385). Cities have only such power and authority as are conferred upon them by the Legislature and powers reasonably incident thereto (431 Fifth Ave. Corp. v City of New York, 296 NY 588; LaGuardia v *991 Smith, 288 NY 1). The State may determine the territory in which the city shall exercise the governmental powers conferred upon them (City of New York v Village of Lawrence, 250 NY 429).
The question squarely presented is under what circumstances must a court find a legislative enactment unconstitutional or otherwise invalid.
Judge Cooke of the Court of Appeals in his recent dissent in the case of Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y, (40 NY2d 731) states the law of New York clearly (p 743): "The declaration of a law as unconstitutional is a delicate task, to be entered upon only with reluctance and hesitation (see People v Beakes Dairy Co., 222 NY 416, 426; 1 Cooley Constitutional Limitations [8th ed], p 334). The postulate of constitutional adjudication is that every enactment of the Legislature is clothed with an exceedingly strong presumption of constitutionality (I.L.F.Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269; see New York v O’Neill, 359 US 1, 6). While the presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and, only as a last resort will courts strike down statutes on such a ground (Wiggins v Town of Somers, 4 NY2d 215, 218-219; Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541). The thrust of examination should be in the direction of validity, not invalidity, since a legislative act must be construed, if fairly possible, so as to avoid the conclusion that it is unconstitutional (United States v Jin Fuey Moy, 241 US 394, 401; Saltser & Weinsier v McGoldrick, 294 NY 499, 509).”
The exercise of the judiciary to declare enactment of a legislative body to be invalid has always been considered to be a grave responsibility (People v Beakes Dairy Co., 222 NY 416, supra). In construing a statute, it is presumed that it is constitutional and valid and intendment is to be indulged in favor of its validity. See New York Jurisprudence, Constitutional Law, (vol 8, § 44, p 571) wherein it is stated: "it is virtually a universal agreement that no court will strike down a statute except on a showing of manifest invalidity”.
The general principles as to the presumption in favor of constitutionality also applies as well to municipal ordinances (Wiggins v Town of Somers, 4 NY2d 215, supra; Mallary, Inc. v City of New Rochelle, 295 NY 712).
In addition to the above-stated general rules favoring validity of statutes and ordinances, it is also the rule adopted in *992 this State that courts below the appellate level should declare laws unconstitutional only in an extremely clear or plain case, or in the clearest case where the invalidity is inescapable.
Having established the general principles governing validity of ordinances, the court must examine the powers vested in that city. All cities have those powers granted to them by the State Constitution and the Legislature. These powers are set forth in article IX of the State Constitution and in sections 19 and 20 of the General City Law. Section 19 states as follows: "Every city is granted power to regulate, manage and control its property and local affairs and is granted all the rights, privileges and jurisdiction necessary and proper for carrying such power into execution. No enumeration of powers in this or any other law shall operate to restrict the meaning of this general grant of power, or to exclude other powers comprehended within this general grant”. (Emphasis supplied.) Section 20 (subd 13) states that: "Subject to the constitution and general laws of this state, every city is empowered: * * * 13. to maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses”. (Emphasis supplied.)
Article 2 (§ 10), of the Municipal Home Rule Law also provides in subdivision 1 (par [ii], cl a, subpar [12]) that local government has the power to provide for "the government, protection, order, conduct, safety, health and well-being of persons or property therein. This provision shall include but not be limited to the power to adopt local laws providing for the regulation or licensing of occupations or businesses”. The Court of Appeals, unanimously, in the case of People v Cook (34 NY2d 100), held as follows (pp 105-106):
"1. The City Police Power
"The 'home rule’ provision of the New York State Constitution provides in pertinent part as follows: '[E]very local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such local law relating to other than the property, affairs or government of such local government: * * * (10) The government, protection, order, conduct, safety, *993 health and well-being of persons or property therein.’ (N. Y. Const., art.IX, § 2, subd. [c], [ii], [10].)
"The Municipal Home Rule Law reiterates this grant of power over matters relating to the health and well-being of inhabitants of the city and expressly adds, 'This provision shall include but not be limited to the power to adopt local laws providing for the regulation or licensing of occupations or businesses’. (Municipal Home Rule Law, § 10, subd. 1, [ii], a, [12].) * * *
"The above provisions amply demonstrate that New York City has been granted the exercise of the police power to promote health by the sovereign people acting through the State Constitution and the State Legislature (see Good Humor Corp. v. City of New York, 290 N.Y. 312). Assuming that an enactment is properly related to the power to promote health, this grant of authority has only two limitations placed upon it: (1) the city may not exercise its police power by adopting a local law which is inconsistent with constitutional or other general law; and (2) the city may not exercise its police power over health to the extent that the Legislature shall restrict the adoption of such local law”. (Emphasis supplied.)
The collection and disposal of garbage and trash, being a matter connected directly with the protection of public health, is within the proper exercise of the police powers of a municipality, (39 NY Jur, Municipal Corporations, § 225, p 329; see 15 ALR 287; 72 ALR 526; 135 ALR 1305) and not restricted by the State Legislature.
The Appellate Division in Matter of Krolick v Lowery (32 AD2d 317) cited article IX of the New York State Constitution as the Bill of Rights for local governments. The court stated (p 322): "Such governments have the power to provide for the 'government, protection, order, conduct, safety, health and well-being of persons and property therein’ * * * Such grant of powers is to be liberally construed”. (Emphasis supplied.)
This court is fully aware of the serious problems now being visited upon nearly all municipalities of this State in finding a proper, sanitary means of disposing of trash and garbage generated within their corporate limits.* Americans are fre *994 quently criticized, both at home and abroad, for being wasteful, manufacturing and purchasing goods with built-in obsolescence, exhausting natural resources at a prodigious rate and indulging in all manner of conspicuous consumption. As a consequence, it has been said that we are “burying ourselves in trash”. Serious concerns relating to air and water pollution also are relevant here.
Because of this, municipal governments have a clear and present duty under the law to make provision for the sanitary disposal of such refuse. It seems apparent and reasonable that that is the underlying purpose of the ordinance in question.
It is stated by counsel for the defendants that the private landfill currently being used by the trash haulers in preference to the county landfill as well as being nearer to the city, serves the health, welfare and safety of the inhabitants just as adequately as the county landfill. Counsel to the city rebutted this by stating that the city’s purpose in enacting the ordinance was to establish a long-range solution to its refuse problem in contrast to other municiaplities which have found themselves in serious trouble in disposing of their garbage and trash.
Although the city/county contract is for a limited period of time (three and one-half years), it can reasonably be assumed that it is the intention of both parties that the arrangement will be renewed over a long term as stated by counsel to the city and the clear intent of the city council in enacting this ordinance.
The court recognizes that there are at least two other ways for the city to achieve the same result and although this court might prefer an alternate method, it is not the court’s place, nor does it have the legal right, to substitute its judgment for that of the elected representatives of the people. (Matter of Herlands v Surpless, 282 NY 647; Fearon v Treanor, 272 NY 268.) No court must assume the role of a super Legislature.
The defendants claim that the underlying purpose is solely economic to avoid the monetary penalty provided in the contract and thus, an illegal exercise of police power. The court feels that such argument has no merit for, although there is undeniably a short-term economic benefit to the city *995 as a result of the passage and enforcement of this ordinance (supra), this is only secondary to the motivating intent of the city council which, from the facts, must be assumed by this court. If any state of facts reasonably can be conceived that would sustain the constitutionality of the ordinance, the existence of that state of facts at the time the law was enacted must be assumed. (Matter of Spielvogel v Ford, 1 NY2d 558; Bohling v Corsi, 306 NY 815.) The court, therefore, accepts the plaintiffs contention that the intent of the council was to provide a long-term solution to a local genuine health problem.
As to the extraterritorial effect of this ordinance in requiring the disposal of trash at the county landfill outside the city limits, the court is of the opinion that such is also justified in this instance as the dominant purpose of this requirement is the regulation and solution of . the trash disposal problems within the City of Geneva. It has been said that, in modern times, when demands upon Legislatures for necessary and important laws are increasing each year, the courts must not be rigid in their construction of legislative power. (Darweger v Staats, 267 NY 290.) Ordinances as previously stated by the State Supreme Court are: "not affected by the mere fact that they may incidentally embrace activities beyond the city limits. There are thus other areas of the law where it is held that a municipality 'may exercise its police power extraterritorially’ to protect a dominant local interest of such municipality. (See City of Poughkeepsie v. Vassar Coll, 35 Misc 2d 604, 606.)” (See, also, Bakalar v Lazar, 71 Misc 2d 683, 686.) (Emphasis supplied.)
The reasoning behind such court decisions, together with the broad powers granted the city pursuant to section 99-a and article 5-G of the General Municipal Law, the State Constitution, (art IX, § 2), the Municipal Home Rule Law, the General City Law and the City Charter lead this court to the conclusion that the police power granted to the City of Geneva to protect the health and well-being of its citizens and visitors amply sustain the extraterritorial effect of this ordinance which was clearly enacted to resolve a basic local problem.
One further significant point raised by the defendants is that the ordinance under the "guise of police power is an arbitrary interference with the personal contractual rights of licensed commercial collectors”. This argument is readily disposed of by the decision of the Court of Appeals in the *996 Flushing Nat. Bank case (40 NY2d 731, 749, supra) which held that the police power "may not be limited or restricted by stipulations in private contracts or in those between private parties and governmental units or agencies, since the police power is incapable of alienation by the parties”. (People ex rel. City of Geneva v Geneva, Seneca & Cayuga Lake Traction Co., 186 NY 516; 9 NY Jur, Constitutional Law, § 167, p 71.)
After establishing that the city has the power to enact the subject ordinance, the court has the responsibility, in passing on its validity, to take into consideration its actual effect. (Waddey v Waddey, 290 NY 251; Lochner v New York, 198 US 45.) The eyes of the court are never limited to the mere letter of the law. They may look behind this to determine its effect. (Lochner v New York, supra.) In whatever language a statute may be framed, its purpose and constitutional validity must be determined from its natural and reasonable effect. (People ex rel Ryan v Lynch, 262 NY 1; Hauser v North British & Mercantile Ins. Co., 206 NY 455; 8 NY Jur, Constitutional Law, § 69, pp 596-598.)
Upon such examination, the court finds the provisions of section 90.40 violative of both Federal and State Constitutions.
Although the ordinance requires the disposal of all rubbish and trash at the county landfill site and prescribes substantial penalties for each violation thereof, the city has no control over who may be permitted by the county to use the landfill, nor does the city have any control over what rubbish and trash may be disposed and dumped at the landfill. In fact, a city license, issued pursuant to this ordinance, is no guarantee, whatever, that the recipient can comply with the requirements of this ordinance.
An examination of the city/county contract submitted to the court discloses that each hauler for hire who hauls refuse to the county landfill must be licensed "under and according to the County’s rules and regulations, which includes approval of his vehicle by the Ontario County Environmental Coordinator.”
Thus the city license is valueless in assuring admittance to the landfill. The contract further provides that the landfill use is subject to the county’s "necessary control procedures”. Furthermore, "all use of County’s landfill granted under the terms of this agreement shall be in complete accord with all ordinances and regulations of the County now in effect or hereafter adopted, governing the use of such landfill”.
*997 Thus the defendant haulers who must, by city ordinance, exclusively use the county landfill are, pursuant to a third-party contract, subject to rules and regualtions not of the city but made by a third party not subject to the terms of the ordinance and not under the city’s control, and which can be changed at any time without the consent of the city or its licensees. For example, a county rule has been adopted since the execution of the contract and the passage of the ordinance prohibiting the dumping of more than five tires per load.
The practical effect of this ordinance is that a fully city-licensed hauler, who after legally collecting refuse in the city, may, for a variety of reasons, which may be changed from time to time, be denied the use of the county landfill. Under the ordinance, as presently constituted, this would constitute a violation of law and subject the hauler to fine and/or imprisonment. A municipality may not, on the one hand, demand certain performance by legislative fiat and at the same time provide for the punishment for such failure, when compliance may be rendered impossible by a third party.
The fixed rule and basic standard by which the validity of all exercise of the police power is tested is that the police power of the State extends only to such measures as are reasonable. All police regulations must be reasonable under all circumstances. The principle is, of course, fully applicable to legislation on the municipal level. (Good Humor Corp. v City of New York, 290 NY 312, supra; Adamec v Post, 273 NY 250; People v Schneider, 132 Misc 349; 9 NY Jur, Constitutional Law, § 176, pp 85-86.) The requirement of reasonableness bars oppressive, capricious or arbitrary exercise of the power (see 9 NY Jur, Constitutional Law, § 179, p 89).
This court finds that the provisions of article IV of the ordinance in question requiring that all ashes, rubbish and trash generated in the City of Geneva be delivered for disposal to the Ontario County landfill site under the circumstances of this case to be unreasonable and arbitrary, both of which are inherent limitations of police power. (Cowan v City of Buffalo, 247 AD 591; Fearon v Treanor, 272 NY 268, supra.)
Accordingly, the motion of the defendants is hereby granted to the extent that article IV of chapter 90 of the Ordinances of the City of Geneva (Refuse Collection Ordinance) is hereby declared unconstitutional under both Federal and State Constitutions, and the informations filed against the defendants, pursuant thereto, are dismissed.

 For example: the City of Rochester, after much legal entanglement, now transports trash to Seneca Falls, New York, a round trip of approximately 120 miles, at a cost of $17 per ton (Upstate Magazine, Jan. 9, 1977); the Villages of Lyons and Clyde and the Towns of Galen and Lyons have been battling over a landfill operation since 1971 (The Geneva Times, Jan. 7, 1977); the haulers in the City of Syracuse presently *994 are in legal controversy with the County of Onondaga over the refuse disposal matters. "Trash shortage costly to 3 Ontario communities” (City & Town of Canandaigua and Town of Hopewell) (Democrat and Chronicle, Jan. 16, 1977).