ALBANY AREA BUILDERS ASSOCIATION et al., Plaintiffs, v TOWN OF GUILDERLAND, Defendant.

Third Department, November 10, 1988

## APPEARANCES OF COUNSEL

*De Graff, Foy, Conway, Holt-Harris & Mealey (James T. Potter* and *Kirk M. Lewis* of counsel), for plaintiffs.

*Kenneth D. Runion* for defendant.

## OPINION OF THE COURT

MERCURE, J.

On June 2, 1987 defendant, the Town of Guilderland in Albany County (hereinafter the Town), purportedly acting pursuant to its authority under Municipal Home Rule Law §§ 10 and 11, adopted a local law entitled the Transportation Impact Fee Law (hereinafter TIFL). Under this law, all applicants for building permits who seek "to make an improvement to land or change use of land which will generate additional traffic" are required to pay a transportation impact fee at the time the permit is issued (TIFL §§ 5, 7). The amount of the fee is determined by a fee schedule set forth in the law. For example, the fee is $937 for a single-family detached dwelling and $375 for a three-story or greater multifamily dwelling. TIFL also established a Transportation Impact Fee Trust Fund and explicitly provides that these funds are to be used for the purpose of capital improvements to and expansion of the Town, County and State roadway network and transportation facilities within the Town. No funds are to be used for periodic or routine maintenance.

Plaintiffs, Albany Area Builders Association, Home Builders Association of Schenectady, Inc., D & M Swift Builders, Inc., Masullo Brothers Builders, Inc. and Traditional Builders, Ltd., commenced a CPLR article 78 proceeding challenging the Town's authority to enact TIFL, stipulated to the adjournment of that proceeding and brought a direct action to this court by submission of the controversy upon an agreed statement of facts pursuant to CPLR 3222 and 22 NYCRR 800.21. The controversy submitted for decision is whether the Town had the statutory and constitutional authority to adopt TIFL or whether TIFL is invalid for lack of such authority.

Municipal Home Rule Law § 10 confers upon local governments the power to adopt local laws dealing with specified matters. This power is in large measure codified in the home rule provisions of the State Constitution *(see,* NY Const, art IX, § 2 [c]). "The theory behind home rule is very simple: it is the thought that local problems, in which the State has no concern, can best be handled locally" *(Baldwin v City of Buffalo,* 6 NY2d 168, 172).

Preliminarily, local governments do not have inherent power to adopt local laws, but may only exercise those powers expressly granted to them by the State Constitution or the Legislature *(see, e.g., 41 Kew Gardens Rd. Assocs. v Tyburski,* 70 NY2d 325, 332; *County Sec. v Seacord,* 278 NY 34, 37; *City of New York v Village of Lawrence,* 250 NY 429, 437). When a local government acts beyond the scope of its authority, its actions are plainly unconstitutional. Given that the nature of plaintiffs' challenge is essentially to the constitutionality of TIFL, it is important to bear in mind that this law is clothed with the same presumption of constitutionality that applies to State statutes generally *(see, 41 Kew Gardens Rd. Assocs. v Tyburski, supra,* at 333; *Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11). While this presumption is rebuttable, the burden is upon plaintiffs to establish beyond a reasonable doubt that TIFL is unconstitutional *(see, Lighthouse Shores v Town of Islip, supra,* at 11; *Kessel v Purcell,* 119 Misc 2d 449, 450). With this principle in mind, we turn to the substance of plaintiffs' argument.

I

■ Plaintiffs first contend that Municipal Home Rule Law § 10 (1) (i), which permits local governments to adopt laws relating generally to their own "property, affairs or government", does not authorize TIFL because of TIFL's far-reaching implications. We agree. Plaintiffs correctly note that the terms "property, affairs or government", as used in the context of home rule provisions, have a limited meaning *(see, Adler v Deegan,* 251 NY 467, 473) and do not encompass matters of substantial State concern even though they also touch upon concerns of the locality *(see, Hotel Dorset Co. v Trust for Cultural Resources,* 46 NY2d 358, 373; *County Sec. v Seacord,* 278 NY 34, 38, *supra; Matter of Sherman v Frazier,* 84 AD2d 401, 409; *County of Orange v Metropolitan Transp. Auth.,* 71 Misc 2d 691, 703, *affd* 39 AD2d 839) or even deal directly with the affairs of a municipality *(Hotel Dorset Co. v Trust for Cultural Resources, supra).* The Court of Appeals in *Baldwin v City of Buffalo* (6 NY2d 168, 173, *supra)* held a local statute altering ward boundaries to be within the constitutional home rule provisions upon finding that "such legislation affects *only* the property, affairs or government of the municipality involved" (emphasis supplied).

In the case at hand, it can hardly be disputed that TIFL has effects which go beyond the Town's boundaries. The imposition

of a transportation impact fee certainly will inhibit new construction, particularly low-income housing, within the Town's boundaries and will thereby shift new development to surrounding localities. Inasmuch as increased development is an issue affecting localities throughout the State and is therefore a matter of State concern, TIFL obviously does not relate solely to the Town's "property, affairs or government". Consequently, we conclude that Municipal Home Rule Law § 10 (1) (i) did not vest the Town with the authority to adopt this law.

## II

■ Municipal Home Rule Law § 10 (1) (ii) further empowers local governments to adopt and amend local laws "not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to [certain enumerated] subjects, whether or not they relate to the property, affairs or government of such local government". Plaintiffs claim that the Town's adoption of TIFL was not authorized by either Municipal Home Rule Law § 10 (1) (ii) (a) (6), as it does not relate to "[t]he acquisition, care, management and use of its highways, roads, streets, avenues and property", or Municipal Home Rule Law § 10 (1) (ii) (a) (7), permitting laws relating to "[t]he acquisition of its transit facilities and the ownership and operation thereof". Subclause (6) merely permits municipalities to regulate the use of municipal roadways *(see, Good Humor Corp. v City of New York,* 290 NY 312, 317; *Browne v City of New York,* 241 NY 96, 124). In *Browne v City of New York (supra,* at 124), Judge Cardozo wrote that this provision empowers localities "to regulate the burdens to which the streets shall be subjected * * * to place reasonable regulations upon traffic, its methods, forms or hours". This provision has never been interpreted to permit a municipality to create new taxes to fund highway improvements and we decline to do so now. Nor does subclause (7) provide authority for the impact fee. This provision grants localities the authority to acquire transit facilities, which are "any tangible means of moving people and things from place to place" *(New York State School Bus Operators Assn. v County of Nassau,* 39 NY2d 638, 640); it does not explicitly or implicitly grant municipalities the authority to create new forms of taxation to support transit facilities.

■ Nor does Municipal Home Rule Law § 10 (1) (ii) (a) (12), authorizing local governments to adopt laws relating to "[t]he government, protection, order, conduct, safety, health and well-being of persons or property therein", provide authority

for the Town's adoption of TIFL.* In order for a local law to come within the police power of a municipality under that subparagraph, it must bear a reasonable relationship to the objective sought to be promoted, i.e., public safety, health or welfare *(see, People v Cook,* 34 NY2d 100, 106; *Good Humor Corp. v City of New York,* 290 NY 312, 320, *supra).* The objective presumably sought to be promoted by TIFL is public safety. However, TIFL does not directly further this objective, but, rather, is aimed at raising revenues. Given the tenuous relationship between TIFL and public safety, health or welfare, we agree with plaintiffs that subclause (12) did not authorize the adoption of TIFL *(see, Matter of Bon-Air Estates v Building Inspector of Town of Ramapo,* 31 AD2d 502; *People v A & C Trucking Co.,* 88 Misc 2d 988).

■ Plaintiffs next argue that the transportation impact fee provided for in TIFL is, in essence, an impermissible regressive tax, not authorized by Municipal Home Rule Law § 10 (1) (ii) (a) (9-a) *(see,* NY Const, art XVI, § 1; *see also, County Sec. v Seacord,* 278 NY 34, 37, *supra; People v Board of Managers,* 123 Misc 2d 188, 195; *Mobil Oil Corp. v Town of Huntington,* 85 Misc 2d 800, 805-806). The label which is attached to an assessment is not dispositive of its true nature *(see, Matter of Joslin v Regan,* 63 AD2d 466, 470, *affd* 48 NY2d 746). Taxes are imposed for the purpose of defraying the costs of government services generally *(see, American Sugar Ref. Co. v Waterfront Commn.,* 55 NY2d 11, 26-27, *appeal dismissed sub nom. New York Shipping Assn. v Waterfront Commn.,* 458 US 1101; *Matter of Joslin v Regan, supra,* at 470). Fees, on the other hand, have been characterized as the "visitation of the costs of special services upon the one who derives a *benefit* from them" *(Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor,* 40 NY2d 158, 162 [emphasis in original]; *see, Matter of Joslin v Regan, supra,* at 470). To the extent that the transportation impact fee imposes the expense of highway improvements upon a small group of home buyers even though the benefit of such improvements is enjoyed by the public generally, this fee indeed resembles a tax.

In our view, the Town's reliance upon *Jenad, Inc. v Village of Scarsdale* (18 NY2d 78) is misplaced. In that case, the Village of Scarsdale, acting pursuant to Village Law former § 179-k (now Village Law § 7-728), gave its planning board the authority to approve plats for subdividing and, as a condition

---

* Plaintiffs erroneously refer to this provision as section 10 (1) (ii) (a) (11). This subclause was renumbered (12) by Laws of 1969 (ch 1136, § 2, eff May 26, 1969).

precedent to approval, required developers to allot land within the subdivision for park purposes or to pay the village a fee in lieu of such allotment which would go into a fund to be used for park purposes. The plaintiff argued that the fee constituted an unauthorized tax in that the payments were to be used for general governmental purposes, but were charged only against subdivision developers. The four-Judge majority disagreed, relying heavily upon the grant of authority found in Village Law former § 179-*l* (now Village Law § 7-730) for a planning board to require, as a condition of subdivision plat approval, that a subdivider allot some land within the subdivision for parks, playgrounds or other recreational purposes and further condition that the planning board may "waive" provision therefor " 'subject to appropriate conditions and guarantees' " *(supra,* at 83). The Court of Appeals concluded that "it was just as reasonable to assess the subdividers an amount per lot to go into a fund for more park lands for the village or town. One arrangement is no more of a 'tax' or 'illegal taking' than the other" *(supra,* at 84). Here, there is no statutory authority from which to make a similar finding of reasonableness.

■ Even if this were not the case, we also find, as contended by plaintiffs, that TIFL is inconsistent with and preempted by general laws regulating highway funding and municipal finance *(see, Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 105). It is noted initially that intent on the part of the Legislature to preempt a particular area need not be express, but may be implied *(see, New York State Club Assn. v City of New York,* 69 NY2d 211, 217, *affd* 487 US —, 108 S Ct 2225; *Consolidated Edison Co. v Town of Red Hook, supra,* at 105). "A desire to preempt may be implied from a declaration of State policy by the Legislature * * * or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area" *(Consolidated Edison Co. v Town of Red Hook, supra,* at 105). Also relevant to the issue of preemption is "the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme * * * including the need for State-wide uniformity in a given area" *(Matter of Ames v Smoot,* 98 AD2d 216, 219), as well as "the lack of any perceived 'real distinction' between any particular locality and other parts of the State in this regard" *(People v De Jesus,* 54 NY2d 465, 468; *see, Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347, 350).

The means by which revenues are raised and expended for the purpose of improving transportation facilities are the subject of comprehensive regulation by the Legislature, pri-

marily codified in Town Law article 8. An annual budgetary process is dictated, commencing with the submission of the Highway Superintendent's estimate of expenditures (Highway Law § 141; Town Law § 104) and proceeding with an allocation of highway funds in the preliminary Town budget, subject to legal limitations thereon (Town Law § 107; Highway Law § 271). The manner of collecting (Town Law § 115) and expending (Highway Law §§ 284, 285) funds for road improvements and repairs is similarly regulated. The Town Law also contains provisions addressing improvements that benefit specific property owners. In particular, Town Law § 200 (1) provides that owners of property abutting streets or highways may petition the Town Board for improvements thereto or the Town Board may on its motion adopt a resolution to make such improvements. This statute also sets forth detailed procedures for planning improvements, estimating expenses and obtaining approval (see, Town Law § 200). The funding of such improvements is governed by Town Law § 202 (2), which states that such costs: "shall be borne by local assessment upon the several lots and parcels of lands which the town board shall determine and specify to be especially benefited by the improvement, and the town board shall apportion and assess upon and collect from the several lots and parcels of land so deemed benefited, so much upon and from each as shall be in just proportion to the amount of benefit which the improvement shall confer upon the same." These statutes establish a comprehensive scheme for financing highway improvements which benefit the general public as well as specific property owners. Permitting towns to raise revenues with impact fees would allow towns to circumvent the statutory restrictions on how money is raised (Highway Law § 271) and, further, would permit towns to create a fund of money subject to limited accountability, not subject to the statutory requirements governing how funds for highway improvements are spent (see, Highway Law §§ 284, 285, 285-a).

We conclude that the Town did not have statutory or constitutional authority to adopt TIFL and that the law is invalid for lack of such authority.

WEISS, J. P., YESAWICH, JR., LEVINE and HARVEY, JJ., concur.

Judgment rendered in favor of plaintiffs, and it is declared that the Town of Guilderland Transportation Impact Fee Law is invalid, with costs.