Matter of Schermerhorn Residential Holdings, L.P. v Washington County Sewer Dist. II
2026 NY Slip Op 03719
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Schermerhorn Residential Holdings, L.P., et al., Respondents,
v
Washington County Sewer District II et al., Appellants.

Decided and Entered:June 11, 2026
CV-25-0958
Calendar Date: April 21, 2026
Before: Garry, P.J., Ceresia, Powers And Mackey, JJ.

Johnson & Laws, LLC, Clifton Park (April J. Laws of counsel), for appellants.
Goldman Attorneys PLLC, Albany (Paul J. Goldman of counsel), for respondents.

[*1]
Garry, P.J.
Appeal from an order and judgment of the Supreme Court (Amy Quinn, J.), entered June 10, 2025 in Washington County, which partially granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to declare invalid Local Law No. 2024-01 of County of Washington.
In this litigation, petitioners — the present owners of a multiunit residential development — challenge the legality of a fee required to connect their property to respondents' sewerage system. Some background is needed to understand, and thus analyze, that fee. Respondent Washington County Sewer District II (hereinafter WCSDII), formed in 1983, operates a wastewater collection system through which the sewer systems of the Village of Hudson Falls, the Village of Fort Edward and the Town of Fort Edward are conveyed to a wastewater treatment plant before being discharged into the Hudson River (see generally County Law art 5-A). To finance WCSDII's debt service and operation and maintenance costs, respondent Washington County enacted Local Law No. 1989-04, which established a schedule of charges for the discharge of sewage into WCSDII's sewerage system, including annual ad valorem assessments for debt service (see Local Law No. 1989-04 of County of Washington, art III, §§ A, D); annual operation and maintenance costs apportioned among users in accordance with their proportional share of such costs (see Local Law No. 1989-04 of County of Washington, art IV, § A); and extraneous flow charges proportionate to users' volume discharge (see Local Law No. 1989-04 of County of Washington, art IV, § F; see generally County Law § 266). The 1989 local law also permitted the collection of those same charges from out-of-district users, provided they were computed in the same manner as the charges for in-district users (see Local Law No. 1989-04 of County of Washington, art V, §§ A, B).
In 2006, WCSDII entered into an agreement with nonparty Ark Development Group, LLC — a predecessor in title of petitioners — whereby WCSDII agreed to provide sewer disposal treatment services to the subject property, located in the neighboring Town of Kingsbury, "on the same terms and conditions as may be established for those users located within [the district]" and Ark agreed to pay a fee "based upon the assessed value of the subject property, water usage, unit charges,[FN1] sewer types, and other such factors as may be utilized" by WCSDII (see generally County Law § 265). By its own terms, that agreement was set to terminate if the property became included within the boundaries of a duly formed sewer district. That occurred in 2007, when, upon Ark's proposal, the Town of Kingsbury formed Kingsbury Sewer District No. 2 (hereinafter KSD2). In exchange for the establishment of KSD2, Ark agreed to plan for, undertake and finance the construction of the infrastructure and improvements required for the establishment of the new sewer district and to arrange for the transfer [*2]of same to the Town or KSD2 upon its completion at no cost to the Town.
The type of charge that is at issue on this appeal was first imposed, informally, in or around 2005 and was later codified in 2013 when Washington County amended Local Law No. 1989-04 to authorize various new miscellaneous charges upon a finding that new users both inside and outside WCSDII should bear responsibility for improvements necessitated by their demand and recognizing that such out-of-district property owners had not contributed to district taxes (see Local Law No. 2013-09 of County of Washington § 2 [a]). Those new charges included a connection fee (see Local Law No. 2013-09 of County of Washington § 5). For in-district property owners, the connection fee was set at $1,000, in addition to any applicable review fees, with the fee required to be segregated and used to mitigate "inflow and infiltration" — that is, stormwater and groundwater that enters the sewer system and increases the overall flow (Local Law No. 2013-09 of County of Washington § 5). For out-of-district property owners, the fee was set at $2,500, again in addition to review fees, and was required to be "used for expanding and improving the existing sewage treatment plant and collection system of [WCSDII]" (Local Law No. 2013-09 of County of Washington § 2). In apparent conformity with its prior practice, WCSDII implemented those connection charges on a per-unit basis.
In 2021, the Town of Kingsbury, on behalf of KSD2 and another sewer district, entered into an intermunicipal agreement with Washington County, on behalf of WCSDII, for sewer operation, maintenance and billing (see generally County Law § 265). In exchange for its services and oversight of the sanitary sewer system servicing the Town's users, WCSDII agreed to bill the Town's users its "costs and expenses incurred . . . under [the] agreement," including, but not limited to, a set usage charge (or equivalent dwelling unit charge for nonmetered uses) to cover operating expenses, an equivalent ad valorem charge as charged to WCSDII users, and a surcharge per user or equivalent dwelling unit for future repair or replacement of KSD2 infrastructure connected to WCSDII. Charges for those not yet connected to KSD2 and WCSDII were not explicitly addressed.
Petitioner Schermerhorn Residential Holdings, L.P. acquired the subject property and all rights to the project being developed thereon at some point in early 2022, and Schermerhorn later conveyed same to petitioner Dean Quarry Apartments, LLC and became the sole member thereof. As ultimately developed, the property consists of nine buildings with a total of 252 residential units. Petitioners advise that the project is substantially complete. Once connected, the property's main sewer line will require a single connection to an existing manhole owned by KSD2, which will then flow within KSD2's infrastructure to WCSDII's system per the 2021 intermunicipal agreement.
In 2023, Washington County updated [*3]its sewer law with respect to several sewer districts, including WCSDII, expressly superseding and replacing in its entirety Local Law No. 1989-04, among other local laws (see Local Law No. 2023-04 of County of Washington, art 1, § 104). With this update came the County's first effort to define "[c]onnection [c]harge," also referred to as a "[t]ap [f]ee" — a "one-time application fee to offset [sewer d]istrict expenses to process an application for a connection of a building/street lateral to the public sewer" (Local Law No. 2023-04 of County of Washington, art 2, § 201). Pursuant to the County's definition, "[t]he fee also covers plan review, permit issuance, street repair costs, and inspection costs" and "may be scaled to the amount of work involved, or to the size of the public sewer involved" (Local Law No. 2023-04 of County of Washington, art 2, § 201).
Thereafter, petitioners disputed respondents' practice of imposing connection charges per unit, citing the absence of such authorization in the 2013 amendment, notwithstanding what appears to be the prior acceptance of that practice on their part and the part of their predecessors. Petitioners later attempted to file their sewer permit application to connect to WCSDII facilities with a flat fee of $2,500, and WCSDII did not accept it. Their application was eventually accepted, but, shortly after that acceptance, WCSDII declared a moratorium on pending applications for out-of-district sewer connections to correct what it deemed to be an error in the connection fee structure of Local Law No. 2013-09. WCSDII then returned petitioners' application, citing a failure to tender the full fee due, among other reasons. Following a public hearing, Washington County enacted the local law challenged on this appeal, Local Law No. 2024-01, which amended Local Law No. 2013-09 by "clarify[ing]" WCSDII's practice of requiring connection fees per unit (Local Law No. 2024-01 of County of Washington § 2; see Local Law No. 2024-01 of County of Washington § 3) and repealed that portion of Local Law No. 2023-04 that purported to supersede and replace Local Law No. 1989-04 (see Local Law No. 2024-01 of County of Washington § 4).FN2 Although not a marked amendment, the County notably also changed the stated purpose of the out-of-district connection fee from expanding and improving WCSDII's infrastructure to inflow and infiltration mitigation (see Local Law No. 2024-01 of County of Washington § 3).
Petitioners in turn commenced this combined CPLR article 78 proceeding and action for declaratory judgment, seeking first to annul the connection fee imposed for the subject project — exceeding $500,000 — as arbitrary and capricious and violative of the definition of connection charge as set forth in Local Law No. 2023-04 and to compel WCSDII to accept their sewer permit application for a flat fee of $2,500. Petitioners further sought a declaration that the per-unit out-of-district connection fee set forth in Local Law No. 2024[*4]-01, allegedly aimed at generating revenue, is violative of the authorized funding mechanisms of County Law § 266 (1) (a), an illegal tax, and an impermissible impact fee. After an unsuccessful CPLR 3211 motion, respondents answered, setting forth several affirmative defenses, including failure to join necessary parties. Following oral argument, Supreme Court generally granted the relief sought, rejecting respondents' affirmative defenses, finding the connection fee to be preempted by County Law article 5-A, an illegal tax and impermissible impact fee, declaring that part of Local Law No. 2024-01 as required per-unit connection fees for out-of-district users to be invalid and directing respondents to accept petitioners' application to connect for a fee of $2,500. Respondents appeal.
We initially reject respondents' argument that this combined proceeding/action should be dismissed for failure to join the Town of Kingsbury and/or KSD2 as necessary parties (see generally CPLR 1001 [a]; Matter of 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d 155, 160 [1st Dept 2002]). Notwithstanding the geographical location of the subject property, the principal issue in this hybrid proceeding is whether WCSDII's imposition of a per-unit connection fee pursuant to Local Law No. 2024-01 was lawful. That determination concerns the validity of respondents' actions only (see Matter of Coney Is. Preparatory Pub. Charter Sch. v New York State Educ. Dept., 241 AD3d 57, 62 [3d Dept 2025], lv denied 44 NY3d 911 [2026]; Matter of DeWolf v Wirenius, 229 AD3d 929, 931 [3d Dept 2024]; compare Matter of A & F Scaccia Realty Corp. v New York City Dept. of Envtl. Protection, 200 AD3d 875, 877 [2d Dept 2021]). Respondents' assertion that the Town of Kingsbury may be financially liable in the event the challenged fee is not paid in full finds no basis in the express terms of the 2021 intermunicipal agreement, nor may a connection fee for a property owner not yet using the Town's system be properly characterized as consideration for that agreement or for the 2007 agreement forming KSD2. There is therefore no possibility that a judgment would inequitably affect the Town in those respects (see Matter of Mid Is. Therapy Assoc., LLC v New York State Dept. of Educ., 99 AD3d 1082, 1083-1084 [3d Dept 2012]; compare Arrigo v DiNapoli, 204 AD3d 1339, 1342 [3d Dept 2022]). To the extent that respondents assert that the Town of Kingsbury desires to intervene, we note that no such application has been made despite the Town's demonstrated awareness of this litigation (see generally CPLR 7802 [d]). Petitioners do seek to compel respondents to accept their connection application, and connection to WCSDII would first require connection to infrastructure controlled by KSD2; KSD2's participation would thus be required to accord petitioners complete relief as to that discrete cause of action. However, as discussed more fully below, we find that petitioners are not entitled to relief in [*5]the form of mandamus to compel, and thus the failure to join KSD2 and/or the Town does not warrant dismissal of that claim.
Turning to the merits, we begin by clarifying the analytical framework. First, any reliance by respondents on the foregoing contractual arrangements between petitioners' predecessors in interest and/or the subject municipalities is misplaced. Although respondents possess the authority to contract for the acceptance of out-of-district sewage (see County Law § 265), the charge challenged here was imposed pursuant to a generally applicable local law (see Local Law No. 2024-01 of County of Washington). Indeed, although the matter of connecting new users to KSD2 and/or WCSDII was ripe for addressing, the relevant agreements are silent in this material respect. Accordingly, we are required to assess the validity of the charge under principles governing municipal fees. Nor does this case turn on a true field preemption question. Petitioners passingly invoked preemption concepts in a memorandum of law but in support of their claim that County Law § 266 sets forth the methods by which a sewer district is authorized to generate revenue. Thus, the first question is simply whether Local Law No. 2024-01 violates that statutory provision (see generally Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99, 104-105 [1983]).
As petitioners' highlight, the County Law delineates distinct mechanisms by which a county sewer district may finance its capital expenses and operating and maintenance costs, including the imposition of equitable user charges, ad valorem levies and special benefit assessments (see County Law §§ 266 [1]; 270, 271; General Municipal Law § 452; see generally Young Men's Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371, 376-377 [1975]). Respondents contend that these provisions govern only the allocation of costs among in-district users and therefore do not constrain their authority to impose charges upon out-of-district entities seeking connection. Even assuming that distinction has some force, it too does not resolve the issue. The concept that fees imposed by a municipality in connection with access to public services may not be used to generate general revenue is not derived solely from the County Law but from broader principles governing the exercise of municipal regulatory authority.
The distinction between a permissible regulatory fee and an impermissible tax turns on the purpose and function of the charge (see Albany Area Bldrs. Assn. v Town of Guilderland, 141 AD2d 293, 298 [3d Dept 1988], affd 74 NY2d 372 [1989]; accord New York Tel. Co. v City of Amsterdam, 200 AD2d 315, 317-318 [3d Dept 1994]). "Taxes are imposed for the purpose of defraying the costs of government services generally. Fees, on the other hand, have been characterized as the visitation of the costs of special services upon the one who derives a benefit from them" (Albany Area Bldrs. Assn. v Town of Guilderland, 141 AD2d at 298[*6][internal quotation marks, emphasis and citations omitted]; accord Matter of Phillips v Town of Clifton Park Water Auth., 286 AD2d 834, 835 [3d Dept 2001], lv denied 97 NY2d 613 [2002]). Thus, if charges " 'are exacted for revenue purposes or to offset the cost of general governmental functions they are invalid as an unauthorized tax' " (Matter of Phillips v Town of Clifton Park Water Auth., 286 AD2d at 835, quoting Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vil. of Monroe, 49 AD2d 461, 465 [2d Dept 1975]; see Matter of 201 C-Town LLC v City of Ithaca, N.Y., 206 AD3d 1398, 1401 [3d Dept 2022]). To be deemed a permissible regulatory fee, the charge must bear a reasonable relationship to the actual cost of the service being regulated (see Watergate II Apts. v. Buffalo Sewer Auth., 46 NY2d 52, 58 [1978]; Matter of Valentino v County of Tompkins, 45 AD3d 1235, 1237 [3d Dept 2007]; Mark IV Constr. Co. v County of Monroe, 187 AD2d 985, 985 [4th Dept 1992]; Coconato v Town of Esopus, 152 AD2d 39, 43 [3d Dept 1989], lv denied 76 NY2d 701 [1990]).
To support the imposition of the challenged fee, respondents proffered an affirmation of WCSDII's executive director, who first explained the pertinent sewer infrastructure. Many areas of WCSDII operate by way of a "combined" sewer system, meaning that stormwater enters the same pipes as sanitary sewage. Groundwater can also enter the system through breaks or gaps in the sewer pipes. Such inflow and infiltration, respectively, can overwhelm a combined system, causing burst pipes, backup into buildings, discharge of wastewater onto the ground or flooding of treatment facilities. To alleviate those occurrences, combined systems have designated combined sewer overflow locations, to which the combined water can discharge when inflow and infiltration demand is high. For WCSDII, those locations are predominately along the Hudson River. This combined sewer overflow process is regulated by the Department of Environmental Conservation (hereinafter DEC) by way of a State Pollution Discharge Elimination System (hereinafter SPDES) permit. Pursuant to its SPDES permit, WCSDII must ensure that new flows from both within and outside WCSDII do not contribute additional wastewater to overflow events. According to the executive director, but for a reduction of inflow and infiltration, WCSDII would not be able to approve a new sewer connection, such as petitioners', as additional unmitigated sanitary flow would negatively impact combined overflows and thus violate their SPDES permit. In other words, the act of connecting carries an obligation to create corresponding capacity.
The executive director further explained that, in or around 2005, WCSDII began charging out-of-district users a $2,500 per-unit fee to connect to its system in lieu of requiring each intended user to pay for an inflow and infiltration reduction project. Present connection applications, however, are not limited to that fee; the executive [*7]director provided one recent example of an additional offset project that a developer was required to undertake to satisfy DEC's current requirement that new connections to combined sewers either demonstrate no negative impact or pay to fund 4:1 sanitary-stormwater separation — meaning that, for every one gallon of sanitary sewer one wishes to contribute to a combined system, one must pay for four gallons of stormwater to be removed therefrom. The cost of that specific mitigation project was estimated to be over $4.5 million. Applying the same flow-based analysis and general regulatory requirements to petitioners' projected sanitary discharge, the executive director estimated that the inflow and infiltration offset required to permit the subject connection would cost petitioners nearly $3 million if proposed today.
Petitioners' principal argument in opposition to the foregoing is that inflow and infiltration mitigation is a system-wide operation or maintenance concern unrelated to the cost of connection. Although this is ordinarily a fair characterization, we find that the record rationally supports respondents' position that, as a function of WCSDII's regulatory obligations, mitigation may be deemed a condition precedent to the approval of a new connection, even if such measures also confer incidental system-wide benefits. Through that lens, we perceive no meaningful conflict between the County's definition of connection charge and the stated purpose of the per-unit fee. The use of a standardized methodology, in and of itself, is also not fatal as municipalities are not required to engage in individualized cost accounting in every instance and may instead employ reasonable proxies (see Watergate II Apts. v. Buffalo Sewer Auth., 46 NY2d at 59; Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d 158, 163 [1976]).
The dispositive inquiry, therefore, is whether the challenged fee bears a reasonable relationship to the cost of accommodating the proposed connection or the burden that the connection imposes on respondents' system. The executive director's analysis, including reference to recent projects and prevailing engineering standards, tends to support respondents' contention that the costs associated with accommodating new sanitary sewer connections are substantial and that the per-unit charge serves as a conservative proxy for such expenses. However, the present record does not conclusively establish that the $2,500 per-unit fee — codified pursuant to Local Law No. 2024-01 but first imposed in 2013, if not 2005 — was derived from, or reasonably approximates, the cost of satisfying that obligation. The submissions do not identify the methodology by which the amount of the fee was originally determined or explain the relationship between the fixed charge and the range of costs associated with inflow and infiltration reduction. At the same time, respondents' proffer is not so lacking as to permit resolution [*8]of this issue as a matter of law in petitioners' favor. In our view, the competing submissions raise questions of fact as to whether the challenged fee represents a reasonable approximation of the cost of accommodating new out-of-district connections. Under these circumstances, a hearing is warranted to determine whether the fee bears the requisite relationship to cost (see Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vil. of Monroe, 49 AD2d at 465). Accordingly, the matter must be remitted to Supreme Court for further proceedings.
In view of remittal, we lastly note that, should the subject fee not be upheld following further proceedings, the appropriate remedy would be to annul the connection fee as provided for in the current local law, not fix the amount to be charged in its place. That determination is reserved to the administrative body in the first instance.
Ceresia, Powers and Mackey, JJ., concur.
ORDERED that the order and judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1
As utilized by Local Law No. 1989-04, a number of "units," or "[e]quivalent [d]omestic [u]nits," were assigned to various categories of premises to facilitate the annual apportionment of operation and maintenance costs among users (Local Law No. 1989-04 of County of Washington, art IV, Unit Charge Schedule).

Footnote 2
For the purpose of calculating the connection fee, Local Law No. 2024-01 invokes the unit charge schedule of Local Law No. 1989-04 (see Local Law No. 2024-01 of County of Washington, art IV-A), which provides that premises occupied or designed to be occupied by two or more families would be charged at the rate for one unit for the first two separate living quarters and then 0.8 of that unit rate for any additional quarters (see Local Law No. 1989-04 of County of Washington, Unit Charge Schedule, § B).