Fuchsberg, J.
The question before us is whether a local government may require applicants for variances and special use permits before its board of zoning appeals to pay certain costs incurred by the board in the course of reaching its determination.
In a prior appeal between the parties, we held that the plaintiff was entitled to a variance and a special use permit for the property it had purchased in the village (38 NY2d 283). At issue now is the village’s Ordinance 22, which specifies that any applicant for a variance or a special use permit, other than one seeking a variance in connection with a single-family residence, shall, in addition to a set fee of $60 for the variance and $50 for the permit, pay the actual costs incurred by the board in passing on the matter. Section 1 of the ordinance specifically states that such costs may include: "(a) Advertising (b) Stenographic minutes of meetings (c) Engineering costs (d) Inspection costs (e) Legal fees (f) Recording fees.” No precise amounts or ceilings are spelled out.
The village is a small one, almost exclusively residential. The application of the plaintiff, a religious corporation which purchased improved property for use primarily as a house of worship and religious school, provoked strong and organized opposition amongst its prospective neighbors. Consequently, *161 presumably because of the special interest engendered, the board of appeals hired a hall for the hearings instead of holding them at a member’s home as had been customary, retained its own legal counsel, and ordered that the proceedings be stenographically recorded rather than following its more usual and less expensive practice of taping them. It also required that the minutes be transcribed and a copy provided for each of the five board members.
Save for the stenographer’s attendance and recording fee, which the plaintiff was called upon to pay directly, the other items were charged against a fund which the plaintiff was required to deposit in advance with the village. The costs so charged were $2,561.50, of which $2,322.20 represented legal fees.[1] The direct payment to the stenographer amounted to an additional $1,000. Since no credit was given for the $110 in fees for filing the variance and use permit applications, the total cost to the plaintiff was $3,671.50.
In this declaratory judgment action, the plaintiff does not raise any question about the reasonableness of the rates at which each of the items was incurred. Instead, it contends that the village is without statutory authority to impose such open-ended costs upon an applicant before the board. On its motion for summary judgment, made pursuant to CPLR 3212, Special Term found that the charges for publication of notice, for stenographic attendance and recording, and for engineering and inspection fees were properly levied and that, to the extent section 1 provided for them, it was valid. It disallowed the charges for the board’s legal fees, for the rental of the meeting hall, and those for transcribing and providing copies of the minutes, holding that section 1 could not authorize them. However, it left open the disposition of the last item until there had been a factual determination of whether the transcribing and copying had been at the instance of the board or of the plaintiff.[2] The Appellate Division affirmed the ensuing judgment without opinion. Both sides having now appealed to us, for the reasons which follow we uphold the order of affirmance.
*162 Preliminarily, it should be noted that the board of zoning appeals is a quasi-judicial body created by State law (Village Law, § 7-712). It provides a forum for the mitigation of harsh effects which zoning laws may have in exceptional cases (see 1 Anderson, New York Zoning Law and Practice [2d ed], §§ 17.07-17.12, pp 731-736; Bassett, Zoning Practice in the New York Region: Comprising a Series of Aids to the Practice of Zoning, a Statement Regarding the Application of Zoning in New York City, and a Model State Enabling Act with Annotations [1926]; cf. Katz v Board of Appeals of Vil. of Kings Point, 21 AD2d 693; Weiss v Village of Lindenhurst, 144 NYS2d 228; Daly v Eagan, 77 Misc 2d 279). As we earlier decided (38 NY2d 283, 290-291, supra), this plaintiff had indeed brought before the board a case of hardship entitling it to relief from overrestrictive ordinances. In doing so, it had not sought to be endowed with a mere benefit, but had pressed for the vindication of a right.
That a right rather than a benefit is being pursued is of special significance in the context of this case. It is no doubt at the heart of <he reason why, as the zoning expert and commentator whose work was instrumental in the formulation of the State enabling legislation (see Village Law, § 7-712; Town Law, § 267) has noted, the appellate jurisdiction of the board in hardship cases is fully and independently developed in our State statutes and not subject for its existence to the vagaries of the presence or absence of supplemental local enactment (Bassett, Zoning Practice in the New York Region: Comprising a Series of Aids to the Practice of Zoning, a Statement Regarding the Application of Zoning in New York City, and a Model State Enabling Act with Annotations [1926], at pp 24-25). Correspondingly, an ordinance should be scrutinized more carefully for its inhibitions against the pursuit of such a right as distinguished from a benefit. For the justification which underlies fee structures has most often been expressed as a visitation of the costs of special services upon the one who derives a beneñt from them (see Matter of Hanson v Griffiths, 204 Misc 736; City of Buffalo v Stevenson, 207 NY 258; People v Malmud, 4 AD2d 86; People v Brooklyn Garden Apts., 283 NY 373; Fox v Kern, 12 NYS2d 561).
Significant also is that the legislation under which villages set up boards of zoning appeals does not specify how their expenses are to be paid (Village Law, § 7-712, subd 1). In analogous situations, we have held that the Legislature’s *163 mandate carries with it an implied limited delegation of power to the local government to enact ordinances necessary to carry, out the legislative plan (see Village of Carthage v Frederick, 122 NY 268; City of Buffalo v Stevenson, 207 NY 258, supra). The question thus still remains whether the provisions of the ordinance under which the charges in this case were exacted went beyond the bounds of the limited authority to the village.
The open-ended, indeed unlimited, nature of the fees which it authorizes therefore makes the ordinance vulnerable to attack on the ground that it overreaches the State statute’s implied grant of power to the village. For when the State’s jealously guarded police power is delegated to a local government or to its agencies, it must be accompanied by standards which guide and contain its use (Matter of Fink v Cole, 302 NY 216; 8200 Realty Corp. v Lindsay, 27 NY2d 124; Matter of Small v Moss, 279 NY 288, 295; City of Amsterdam v Helsby, 37 NY2d 19, 27, 36). As a consequence, when the power to enact fees is to be implied, the limitation that the fees charged must be reasonably necessary to the accomplishment of the statutory command must also be implied (City of Buffalo v Stevenson, supra, at pp 261-262).[3]
The fees also "should be assessed or estimated on the basis of reliable factual studies or statistics” (9 McQuillan, Municipal Corporations, § 26.36, p 89; see, also, Bon Air Estates v Village of Suffern, 32 AD2d 921; Matter of Hanson v Griffiths, 204 Misc 736, supra; People v Malmud, 4 AD2d 86, supra). Put another way, the yardstick by which the reasonableness of charges made to an applicant in an individual case may be evaluated is the experience of the local government in cases of the same type. Without the safeguard of a requirement that fees bear a relation to average costs, a board would be free to incur, in the individual case, not only necessary costs but also any which it, in its untrammeled discretion, might think desirable or convenient, no matter how oppressive or discouraging they might in fact be for applicants.
*164 That is not to say that classes of applicants may not be established. Experience may indicate that average costs justify distinctions among different kinds of applicants, describable by objective criteria such as, for instance, whether they are involved in residential as distinguished from nonresidential uses. Or categories may revolve around such determinants as the size or value of the property at issue. Where classifications are rational, fees for each class may be based on its average (see Matter of Hanson v Griffiths, supra, upholding classifications of filing fees in Surrogate’s Court by the size of the estate involved). Thus, if a village can demonstrate that a class of applicants generally requires a board to incur costs greater than those usually attendant upon applications for those in another classification, it may establish such a class and may establish its fee schedule accordingly.
But, obviously, a fee is not average when it is based on a sample of one. Here the village acknowledges that the plaintiff’s application was the only one of its kind received by it in many years, if ever. Yet, it legislated liability for whatever expenses the board unilaterally might decide to incur in a case involving such an applicant without making any attempt whatsoever, so far as the record shows, to determine whether the resulting charges would be so extensive that they would tend to discourage those seeking relief by appeal to the board. Nor is there even the slightest indication of any effort made to avoid idiosyncratic or atypical charges by ascertaining what prevailing practices had been developed over a range of experience by other villages of comparable size on the basis of their average experience.
It is not just the amount of the fees alone which is here involved. At stake are the terms upon which citizens may have access to a governmental function and their right to have those terms, whether or not they are in the form of fees, fixed by standards which lend assurance that they are not "unreasonable, discriminatory nor oppressive” (Trio Distr. Corp. v City of Albany, 2 AD2d 326, 329). Furthermore if fees for seeking relief from an unduly burdensome zoning ordinance can be tailored by a board to an individual case without reference to whatever is usual or average in other such cases, the appearance of a potential for abuse or discrimination may arise, whether one actually occurs or not. Manifestly, ready accessibility of judicial and other mandated governmental functions is too important for that accessibility and its appear *165 anee of accessibility to be impaired by the insufficiently delineated fee system in this case, designed, as defendant admits it was, to guarantee that the community’s taxpayers bear no share of the expense of maintaining the mandated function of government which the board was carrying out. That requirement puts too exclusive an obligation on the individual to bear the entire cost of a governmental function whose very existence is in furtherance of the general welfare (cf. French Investing Co. v City of New York, 39 NY2d 587, 595-597).
In light of these legal and governmental values, Special Term’s finding that the charges for the cost of publishing the notice required by statute and for the cost of the necessary technical, information-supplying engineering and inspection reports were not in excess of what was necessary in order to carry out the statutory mandate can be supported. While the ordinance does not set out guidelines as to the fees for those items, the wide range of other cases in which such services are commonly employed, as a result of which such charges have come to be fairly uniform and predictable, provides assurance that the board’s power to assess them on a case-by-case basis is not unlimited or unanticipatable (see 2 Rathkopf, Law of Zoning and Planning, § 6, p 55-15, and cases cited therein).
On the other hand, the charges for legal fees, those for transcribing the record of the proceedings and supplying copies of it to each board member,[4] and those for the rental of a capacious auditorium in which large numbers of spectators could be accommodated at each of the board’s sessions, stand on a different footing. They did not represent necessary expenditures but rather conveniences to the board for fulfillment of what in the end was its own decision-making responsibility (see 12 Opns St Comp, 1956, p 374; 21 Opns St Comp, 1965, p 483).
It cannot be gainsaid that the convenience of individual copies of the transcript provided advantages over reliance on memory, note-taking and resort to playback of the recording. But, basically, convenience it was, and not necessity (cf. Matter of Hunter v Board of Appeals of Vil. of Saddle Rock, 4 AD2d 961). Furthermore, the extent to which such charges could mount was utterly dependent on how many and how *166 long would be the sessions over which the board would permit the proceedings to stretch.
The trackless uncertainty was even greater with respect to the automatic charging of the applicant for the excellent legal services of which the board availed itself. Its choice of counsel, the extent to which it chose to rely on their services, indeed whether to engage them at all, rested entirely with the board alone. Of course the board was free, and perhaps wise, to exercise these prerogatives, but the imposition of their cost on the plaintiff was something else again. It would have disproportionately and impermissibly conditioned the availability of the board as a tribunal on an applicant’s readiness to undertake an obligation delimited by things as indefinite as the vigor and determination of zealous opponents or the happenstance that the points at issue might turn out to be unexpectedly intricate.
Thus, since the ordinance permitted the charges for the actual cost of these items to the applicant without so much as a point of reference grounded in data from similar cases, it is, to say the least, impossible to assess whether any or all of the charges so incurred were necessary to the accomplishment of the board’s decision-making function or merely convenient to it. For these reasons, they must be said to be beyond the limitations of the power delegated under the statute.
Accordingly, the judgment appealed from should be affirmed.[5]

. It should be noted that the legal fees in question are solely those incurred by the board prior to its decision on the plaintiff’s application; the village’s legal fees in the case before us now or in the litigation which ensued after the board’s decision, were borne by itself.

. This factual finding, affecting nonfinality of the judgment appealed here, has been stipulated out of the case.

. The constitutionality of the ordinance before us is not directly in issue here; indeed we have already ruled that it is unnecessary to reach that question in this case (36 NY2d 806). The question is, rather, how much power the Legislature intended to confer upon local governments under section 7-712 of the Village Law, and we approach that question with the assumption that the Legislature did not intend to confer any more power than it may delegate constitutionally (see Matter of Van Berkel v Power, 16 NY2d 37).

. Special Term also upheld the validity of the charges for making the stenographic record.

. It should be noted that, by stipulation, the parties, after the decision at Special Term, agreed to share the charges for transcribing and reproducing copies (as distinguished from recording) of the minutes of the proceedings equally. The final judgment entered thereafter accurately reflects that stipulation so that, while Special Term was correct in invalidating the charges for transcribing and making extra copies of the minutes, that finding has become academic in this case. With regard to the cost of renting the auditorium, the situation is made still simpler because, as Justice Suozzi correctly noted at Special Term, even the ordinance does not provide for such a charge.