Simons, J.
(dissenting). I would affirm the order of the Appellate Division.
The critical fact in this action is that it involves fees, not taxes. The difference is that fees, such as those charged defendant’s customers, are charges for benefits and are related to the value of the benefits received. Taxes, on the other hand, are assessed against all real properties located within the area of the taxing authority and are charges made to support government generally without relation to specific benefits received (see, Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52; Jewish Reconstructionist Synogogue v Incorporated Vil. of Roslyn Harbor, 40 NY2d 158, 163-164; Silkman v Board of Water Commrs., 152 NY 327; Matter of Hanson v Griffiths, 204 Misc 736, affd 283 App Div 662; Carmichael v Southern Coal Co., 301 US 495). Although defendant may vary the fees charged for its water and sewer services depending on the user, e.g., commercial or residential, the statute requires that such charges be equitable and that requires that they be equitable in relation to the benefits to the user. Defendant may not adopt classifications fixing different rates unrelated to the benefits received (see, Watergate II Apts. v Buffalo Sewer Auth., supra; Jewish Reconstructionist Synogogue v Incorporated Vil. of Roslyn Harbor, supra; 11 McQuillin, Municipal Corporations § 31.30a, at 222 [3d rev ed]). To the extent that the rates vary from this standard they are discriminatory and constitute a tax to support the sewer system generally (see, Watergate II Apts. v Buffalo Sewer Auth., supra, at p 59; State ex rel. Waterbury Dev. Co. v Witten, 54 Ohio St 2d 412, 377 NE2d 505; Boynton v City of Lakeport Mun. Sewer Dist., 28 Cal App 3d 91, 94-95, 104 Cal Rptr 409, *499 410-412; Town of Taylorsville v Modern Cleaners, 34 NC App 146, 237 SE2d 484). As we noted when we passed on the constitutionality of the original section 1180 of the Public Authorities Law, the Legislature granted defendant the authority to charge fees to users “only on a basis of service rendered” (Robertson v Zimmermann, 268 NY 52, 64). Neither the original statute nor the statute as amended in 1981 grant defendant the power to tax.
Notwithstanding all of this, defendant has chosen to charge one fee to plaintiff for service to its apartment houses and a substantially lesser fee for service to tax-exempt properties such as hospitals, public office buildings or similar structures whose use of the facilities would appear comparable, solely because they are tax exempt. As a result, the fees assessed against similarly situated property owners are patently inequitable resulting in effect in an unlawful tax upon the nonexempt property owners ultra vires defendant’s statutory powers.
The fee charged by defendant is made up of two components; a charge paid on water use and an ad valorem charge based on assessed value. The chosen method of effecting the unequal treatment of defendant’s customers was to exempt some properties from paying one component of the fee charged as rent, the ad valorem levy, in effect, imposing an inequitable surtax for the extra cost on the remaining users of the system. That is precisely what we said defendant could not do when we rejected a challenge to these sewer fees in Watergate II Apts. v Buffalo Sewer Auth. (46 NY2d 52, supra).
In Watergate plaintiff claimed that the charge was a tax because it included not only a traditional user component but also an ad valorem component based on the assessed value of the property. In sustaining the validity of defendant’s fees, and specifically the ad valorem portion of them, we observed that fees may be established after considering a variety of factors, including in defendant’s case assessed values, but that fees collected by defendant must be “in the nature of fees which * * * bear a direct relationship to the cost of furnishing the water services” (Watergate II Apts. v Buffalo Sewer Auth., supra, at p 58). Because the ad valorem portion of the rents was a rough approximation of the cost of furnishing essential services such as effluent and storm sewer lines, sewage collection and treatment facilities, removal of industrial wastes, ensuring adequate firefighting networks and reserves for future development that would not be adequately reflected in water use, we found it was a reasonable part of an over-all sewer rent formula. The charge *500 was equitably related to the benefit received, we held, and thus was a fee, not a tax, notwithstanding the use of ad valorem levies usually associated with taxes as a measure of computing the fee. The majority now turns on its head the reasoning of that decision and well-established rules concerning the distinction between fees and taxes. It sanctions defendant’s exemption of certain users from the ad valorem component by claiming that the ad valorem component relates to a public benefit although we held in Watergate II that it was permissible because it reflected a benefit to the user.
The majority concludes further that the practice is permissible because the properties are exempt from taxation. Taxation, or the exemption from taxation, has nothing to do with the matter, however. Properties may be exempt from taxes because the Legislature decides, for policy reasons, that the owners need not share fully in the costs of government generally but a discriminatory fee may not be charged for a specific service rendered property owners (see, 1 Priest, Principles of Public Utility Regulation, at 290; State ex rel. Waterbury Dev. Co. v Witten, 54 Ohio St 2d 412, 377 NE2d 505, supra; Boynton v City of Lakeport Mun. Sewer Dist., 28 Cal App 3d 91, 94-95, 104 Cal Rptr 409, 410-412, supra; Town of Taylorsville v Modern Cleaners, 34 NC App 146, 237 SE2d 484, supra). We expressly recognized that point in Watergate II when we stated that because defendant’s sewer rents are fees rather than taxes, “there is no less reason to apply the charges to * * * [tax] exempt * * * property than to that which [is] nonexempt” because the tax classification bears absolutely no relationship whatever to the “reality of the services and benefits actually rendered to property owners” by defendant (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 61, supra).
The consequence of these exemptions is that plaintiff’s charges for sewer service are 40% higher than what they would be if all property owners paid rents solely on the basis of services rendered as required under the rule of Watergate. This excess amounts to a tax on plaintiff’s property because it bears no relationship to the benefits and services plaintiff receives but is a general imposition to make up for those properties exempt from the ad valorem portion of the rents. Exempt properties receive benefits from sewer lines and sewage collection and treatment the same as other properties do. To say that the rates are equitable and that there is a rational basis for such distinctions because the market value of the exempt properties is not appreciably increased by the existence of sewer lines and services blinks reality. Although such properties are generally not *501 held for investment purposes, a publicly owned hospital or office building is just as dependent for value upon the existence of an adequate sewage system, for example, as is plaintiff’s apartment building. Neither would exist or at least enjoy its present utility without it. Because the ad valorem component of the rent is specially tailored to reflect this need and value for the sewage connection (see, Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 60, supra), its expense should equitably be charged to the exempt properties.
Nor do I find persuasive Carey Transp. v Triborough Bridge & Tunnel Auth. (38 NY2d 545, remittitur amended 39 NY2d 806, cert denied 429 US 830). The statute involved in Carey granted the authority unconstrained power to set fees.
I accept the majority’s proposition that the statutory requirement that the rates be equitable does not mean that they must be equal. They must be fair though, and there is nothing fair about sewer rates which impose a surcharge of 40% above value received upon nonexempt owners to compensate for revenue losses resulting from services supplied to others paying substantially less than fair consideration for them.
The practice authorized results in the imposition of a tax, contrary to the authority of the statute and our decision in Watergate. I, therefore, dissent.
Chief Judge Wachtler and Judges Jasen, Kaye and Titone concur with Judge Alexander; Judge Simons dissents and votes to affirm in a separate opinion in which Judge Meyer concurs.
Judgment appealed from and order of the Appellate Division brought up for review modified, with costs to defendant and intervenors, and case remitted to Supreme Court, Erie County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.