OPINION OF THE COURT
James D. Pagones, J.
Petitioners seek judgment pursuant to CPLR article 78 as follows:
(1) Voiding a Town Board resolution dated December 9, 1998 which denied petitioners’ request to release a maintenance bond.
(2) Declaring that any claims by the Town subsequent to the expiration date of a maintenance bond are unenforceable.
(3) Declaring that the Town may not charge petitioners for professional fees incurred subsequent to the expiration of the maintenance bond.
(4) Declaring that the bills for professional services are invalid because they are not sufficiently detailed.
(5) Directing the return to petitioners of their certificate of deposit.
(6) Determining that subdivision approval is not subject to revocation.
*627 Respondent Town asserts four objections in point of law.
The essential facts are not in dispute. On January 11, 1994 the respondent granted final subdivision approval for petitioners’ subdivision known as “Wright Subdivision, Phase 2” located on Old Noxon Road. The resolution approving the subdivision contained four conditions which had to be fulfilled before the Planning Board would sign the subdivision plat. The resolution required that the plat indicate that petitioners were utilizing the “rural road — intermediate specification” as was approved by the Planning Board on July 20, 1993. Additionally, the resolution required that the subdivision plat would be signed by the Dutchess County Department of Health prior to the Planning Board’s signing. Third, the petitioners were required to provide all necessary agreements in connection with required easements for access, snow storage and drainage. Finally, petitioners had to provide all formal offers of cession to the Town of La Grange for the proposed road before the Planning Board would sign. On January 6, 1995 the Planning Board chairman signed the final subdivision plat. On September 10, 1997 respondent Town determined that “all the requirements had been completed for the acceptance of Forrest Way as a town road” and moved to accept the same, by dedication, as a public improvement. Respondent required petitioners to provide a maintenance bond pursuant to Code of the Town of La Grange (Town Code) § 85-51 (G). Petitioners’ obligations under the bond were specified as: “the Obligor will at its own expense repair and make good any defects or damage which may develop in the aforesaid dedicated public improvements as a result of use of substandard materials or faulty construction, normal wear and tear expected [sic] and * * * the Obligor (must make) good any defects or damages to the public improvements which may develop as a consequence of construction activities off of the subject roads’ right-of-way for a period of one year beyond the acceptance of dedication of said public improvements.”
The petitioners deposited and assigned a certificate of deposit in the sum of $34,000 on or about December 17, 1997 to secure their obligations under the maintenance bond. Shortly before the expiration of the maintenance bond on September 10, 1998, the engineer hired by the Town inspected the site and provided a list of seven corrective measures which were recommended prior to the release of the maintenance bond. Petitioners consented to an extension of the maintenance bond until December 1, 1998 in order to perform all of the corrective *628 items set forth by the engineer’s letter. Petitioners assert that they undertook all the corrective measures as detailed in the letter. Nonetheless, at a meeting held on December 9, 1998 respondent denied petitioners’ request to release the maintenance bond. Minutes of that meeting indicate that “the Supervisor said that there are still drainage problems with an adjoining property and that the Planning Board is working on correcting this problem.” When petitioners inquired as to what problems still existed, the chairman of the Planning Board stated that “the Town Engineer and the Town Attorney were reviewing the problem and would report to the Town Board within thirty days.” Subsequent to this meeting, the parties communicated in an effort to resolve the impasse. In a letter dated December 18, 1998 advising petitioners that they would be expected to undertake corrective work or forfeit their bond, the Town Attorney gratuitously stated “The Town of LaGrange Planning Board has asked me to research whether there is any basis, under the circumstances of your subdivision, for the revocation of the outstanding subdivision approval, at least with respect to any unsold lots.”
The Town asserts, in response to the instant petition, that petitioners did not correct defects “resulting from construction of swales, contrary to the approved engineering designs.” Respondent has submitted the approved engineering design plans along with the affidavit of an engineer hired by the Town. Site inspections were made on June 20, 1997, August 6, 1997 and August 26, 1998. On August 7, 1997 the engineer wrote to the Town Board with a list of recommendations. Specifically, the engineer stated: “We recommend that the Town require that the following work be completed by the developer along with his contractor, surveyor and engineer, before the road and the easements are accepted by the Town.”
The engineer then listed 12 specific items that needed correction. Subsequently, in a letter dated September 8, 1997 the same engineer advised the Town Board “based on the field visits and the written information received we recommend that the Town accept the road for dedication * * * I walked the site with the developer on August 26th and I walked the site alone today. Based on the information received and the field observations, we find the road improvements to be in satisfactory condition for dedication and establishment of a maintenance bond.” No mention was made that the swales or other parts of the drainage system were not constructed according to design. It is evident that the engineer hired by the Town was satisfied, *629 in September 1997, that petitioners had, in fact, constructed the drainage system, including swales, in accord with the approved engineering designs.
A year later on August 31, 1998 the engineer hired by the Town recommended that corrective work was needed prior to the Town’s release of petitioners’ maintenance bond. According to the engineer, “the recommendation to not release the maintenance bond at this time is based on observations made on August 26, 1998 when I walked the site with Rem Krochmal, the Highway Superintendent. Also, prior to my site walk through with Mr. Krochmal, Yogi Ansorge, the Planning, Zoning and Building Administrator walked part of the site with Ken McLaughlin, the Building Inspector.” Seven corrective measures were detailed in that correspondence. Two measures dealt with damage to pavement on the road. Another corrective measure involved “numerous locations along the edges of the road where vigorous growth of grass has not been achieved.” It was also noted that there was evidence of erosion from the end of the cul-de-sac island. The engineer observed that to improve drainage at the end of the cul-de-sac “the edge of the road is to be finely regraded to drain downhill, away from the road. The disturbed area is to then be carefully raked, topsoiled, seeded, and mulched.” It was suggested that the developer “clean up mud and hay bale areas at Old Noxon Road end of the site”. Finally, the engineer stated “the issue of erosion, fine grading and vegetation within the drainage areas needs to be addressed to the satisfaction of the Town.”
At no time subsequent to that correspondence, prior to expiration of the maintenance bond, did the engineer or anyone else from the Town specifically advise petitioners as to what they needed to do to address “erosion, fine grading and vegetation within the drainage areas.” At the time that the Town Board declined to release the expired maintenance bond, the petitioners had received no notice as to what corrective measures the Town proposed with regard to those issues. The respondent Town acknowledges that the petitioners corrected all the other defects noted by the engineer but contend that they “ignored the defects in the drainage system serving the entire site.”
Petitioners’ obligations pursuant to the maintenance bond are clear and unequivocal. Petitioners are obligated, at their own expense, to repair “any defects or damage” in the public improvements which were the subject of the maintenance bond for a period of one year from the Town’s “acceptance of dedica *630 tion of said public improvementsThe dedication took place pursuant to the resolution of respondent Town on September 10, 1997. Prior to the expiration of this period, respondent detailed specific repairs which needed to be made to the road and the area immediately adjacent to the road. It acknowledged that petitioners completed all of these repairs to its satisfaction. The point in contention is the generalized statement by the engineer that “the issue of erosion, fine grading and vegetation within the drainage areas needs to be addressed to the satisfaction of the Town.” The respondent asserts that this statement was sufficient to notify petitioners of required corrective measures. Because the Town is not yet satisfied with measures undertaken by petitioners, it claims the right to utilize the maintenance bond to undertake corrective measures. Petitioners maintain that they completed all required corrective measures and that the Town has no rightful claim to the maintenance bond.
Statutory authority for the Town’s ability to require a “maintenance bond” derives from Town Law § 277 (9) (c) and Town of La Grange Code, article VII, § 85-51 (G). Respondent’s attorney asserts that the maintenance bond which is the subject of this proceeding is not a “performance bond” within the meaning of Town Law § 277. In one of the few reported cases dealing with maintenance bonds, the Appellate Division, Second Department, came to a different conclusion. It was held that the term “performance” as used in Town Law § 277 “contemplates not merely the completion of work but that the work be of satisfactory quality” and concluded that “maintenance bonds” were included within the statutory purview of section 277 (Town of Chester v Republic Ins. Co., 89 AD2d 959 [2d Dept 1982]). The Town Code is more instructive as to the obligations and procedures relating to a maintenance bond after dedication of public improvements. Section 85-51 (G) of the Town Code provides, inter alia, that any repairs needed to be performed within the maintenance bond period “shall be made by order of the Town Superintendent of Highways, oral or written and, under his direction, and completed to his satisfaction. Such repairs shall be made, or satisfactory arrangements made to make such repairs within a maximum of seven days after such notice from the Highway Superintendent.” Petitioners maintain that at no time during the maintenance bond period or its extension did they receive any written or oral notice from the Superintendent of Highways specifying the corrections that needed to be made regarding “the issue of erosion, fine grading *631 and vegetation within the drainage areas.” The respondent Town has presented nothing in response to this petition to evidence that the Superintendent of Highways at any time provided written or oral notice to the petitioners regarding the alleged additional corrective measures. On January 6, 1999 after the expiration of the maintenance bond, the respondent Town did forward a report from its engineer purporting to detail the “corrective work” which needed to be done in order to justify release of the maintenance bond. However, no notice was provided by the Superintendent of Highways as required by the Town Code and some of the items in the engineer’s report are nothing more than observations which do not specify corrective measures. It is of particular note that in her report of December 22, 1998, the engineer observed, inter alia, that certain drainage easement areas had “not been mowed” and were “overgrown”. Section 85-51 (G) of the Town Code specifically mandates that during the maintenance bond period “the Town shall be responsible for snow and ice control, road cleaning, cleaning of culverts and catch basins and other work of a similar routine nature” (emphasis added). It is evident that the Town Code anticipated that the Town would maintain these drainage easements during the period of the maintenance bond after dedication as a public improvement and their failure to do so cannot be attributed as the fault of petitioners. Additionally, there is a glaring omission from the Town’s return. In her letter dated August 7, 1997 the Town’s engineer stated that some of the “drainage paths” which she inspected were within the dedicated easements to the Town and “some are not.” The maintenance bond in question, by its terms, relates only to the public improvements accepted for dedication by the Town pursuant to Town Code § 85-51 (G). The Town’s engineer has acknowledged that certain of the drainage paths which she inspected and noted for corrective measures fell outside the dedicated easements. Consequently, the maintenance of such drainage paths was not contemplated by the bond which forms the basis of this proceeding. It is clearly incumbent upon the Town to establish, in the first instance, that the corrective measures which it seeks to enforce in fact relate to the public improvements accepted for dedication by the respondent on September 10, 1997. There is no evidence that any of the purported corrective measures even pertain to dedicated public improvements within the intended scope of the maintenance bond.
The respondent relies entirely upon correspondence from the Town’s engineer to establish the corrective measures asserted. *632 In her letter of December 22, 1998, the engineer hired by the Town asserts that the corrective measures must be undertaken in the detention areas, swales and ditches of the subject subdivision. While that correspondence failed to detail the corrective measures needed, subsequent correspondence dated December 29, 1998 sets forth five corrective measures to be taken within the “detention areas, swales and ditches”. Those corrective measures were delineated as “clearing grub; rough grades; shaping ditches; fine grading, topsoil and seed; and grass swale.” The letter fails to specify precisely where these corrective measures are to be taken within the public improvement areas dedicated to the Town. Furthermore, there is no indication that these measures were required by the Superintendent of Highways as mandated by the Town Code.
The primary issue before this court is whether the respondent Town acted in an arbitrary and capricious manner when it refused to release petitioners’ “maintenance bond” on December 9, 1998. It is well established that arbitrary action as contemplated by CPLR 7803 is action without sound basis in reason and is generally taken without regard to the facts. (Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]). The record before the court indicates that the action taken by the Town Board in denying release of the certificate of deposit securing the maintenance bond was made without foundation in fact. At the time that the Town Board made the decision not to release the security for the maintenance bond it had no facts before it. The Superintendent of Highways had not mandated corrective measures as provided in section 85-51 (G) of the Town Code. Minutes of the Town Board meeting dated December 9, 1998 clearly indicate that the only “fact” relied upon by the Board in denying petitioners’ request was an assertion by the Town Supervisor that “there are still drainage problems with an adjoining property and that the Planning Board is working on correcting this problem.” The record is devoid of any evidence that the Superintendent of Highways ever cited any corrective measures which needed to be performed pursuant to the Town Code and the maintenance bond. Even if the court were to consider the “corrective measures” set forth by the Town’s engineer in her several letters to the Town Supervisor, the respondent’s actions would have no rational basis. Respondent’s engineer avers that she originally noted the corrective measures necessary to be performed to the drainage system in correspondence dated August 7, 1997 and August 26, 1997. Ms. Clark attests that *633 the work done by Mr. Wright was “inconsistent with the plans approved by the Planning Board for drainage and erosion control at the time of the subdivision approval.” Ms. Clark asserts that, consequently, in a letter to the Town Board dated September 8, 1997, she advised that “lack of vegetation, standing water and erosion in the reworked drainage facilities could be expected to potentially cause future problems.” (Clark affidavit.) In spite of her professed concerns, Ms. Clark unequivocally recommended dedication of the public improvements.
In reviewing a determination pursuant to CPLR 7803, the court may not substitute its judgment for that of the Town Board (Matter of Lemir Realty Corp. v Larkin, 10 AD2d 1005 [2d Dept 1960], affd 11 NY2d 20 [1962]) but must restrict its consideration to whether the action was taken without sound basis in reason and without regard to the facts (Matter of Pell v Board of Educ., supra, at 231). At the time that the Town Board made its determination to refuse to release the security for petitioners’ expired maintenance bond, the Superintendent of Highways had not ordered specific repairs as required by Town Code § 85-51 (G). In that regard, the respondent has also failed to follow its own lawful procedure. Additionally, the only facts upon which the Town Board could base its determination on December 9, 1998 were contained in correspondence from the Town’s engineer dated August 31,1998 in which she simply stated “the issue of erosion, fine grading and vegetation within the drainage areas needs to be addressed to the satisfaction of the Town.” At the time that respondent made the determination under review, it had not been provided with any specific corrective measures that were necessary nor had its engineer demonstrated that the drainage areas she referred to were part of the public improvement easements contemplated by the maintenance bond. Even on this application, the respondent has failed to demonstrate that the areas of concern cited by the engineer relate to the public improvement easements. Such a showing is a prerequisite to any claim by the respondent to the maintenance bond which relates only to the public improvements dedicated to the Town on September 10, 1997. Additionally, the record before the court demonstrates that one of the corrective measures sought by the Town’s engineer (drainage easements not mowed) was actually an obligation imposed upon the respondent after dedication pursuant to Town Code § 85-51 (G).
For the foregoing reasons, the court finds that respondent had no rational basis to deny petitioners’ request for return of *634 the security for the maintenance bond at the expiration of the extension period. Petitioners are entitled to judgment directing respondent to return the security for the expired maintenance bond.
Petitioners also raise an issue pertaining to invoices for professional engineering services and attorney’s fees incurred by the Town with regard to the maintenance bond. Section 87-5 (A) of the Town Code provides for the payment of certain fees “[cloncurrent with the application for approval” of the subdivision plat. Section 87-5 (B) does provide for the payment of the services of a consultant used by the Planning Board “but in no case shall the additional fee exceed the actual cost to the town.” That section also requires the payment be made “before the plat is endorsed by the Planning Board chairman.” There is no provision in the Town Code for payment of consultant fees incurred by the Planning Board after dedication of public improvements. In opposition to this application, the Town relies entirely upon section 87-5 and cites no other provision of law which would permit it to charge off consultant expenses incurred by the Planning Board after dedication of public improvements.
Even assuming that section 87-5 of the Town Code provided a basis for the fees charged by respondent, the imposition of such fees are still subject to review by this court. Any inspection fees charged by a municipality must be reasonably necessary to accomplish the task involved; may not be open ended or potentially limitless in nature and must be assessed or estimated on the basis of reliable factual studies or statistics (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, 40 NY2d 158 [1976], rearg denied 40 NY2d 836). The court recognizes that it is proper to adopt a provision of the Town Code that requires an applicant to pay for actual inspection costs. However, the holding in Jewish Reconstructionist Synagogue (supra) instructs that an ordinance requiring a developer to simply pay the cost billed by the Town’s engineer is impermissible because the engineer is free to charge whatever he wishes for his services uncontrolled by any specific standard fixed by the ordinance (Cimato Bros. v Town of Pendelton, 237 AD2d 883 [4th Dept 1997]). The Planning Board also billed the petitioners for legal services which are referred to in the request for payments as “consultant fees”. This reference appears to be nothing more than an attempt to bring these fees within the purview of Town Code § 87-5. A plain reading of that section indicates that legal fees were not *635 anticipated as part of the consultant fees otherwise authorized. Additionally, it has been held that such fees do not represent necessary expenditures but rather conveniences to the Board for fulfillment of what in the end is its own decision-making responsibility (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, supra, at 165). The reasoning of the Court of Appeals is instructive in this regard: “The trackless uncertainty was even greater with respect to the automatic charging of the applicant for the excellent legal services of which the board availed itself. Its choice of counsel, the extent to which it chose to rely on their services, indeed whether to engage them at all, rested entirely with the board alone. Of course the board was free, and perhaps wise, to exercise these prerogatives, but the imposition of their costs on the plaintiff was something else again. It would have disproportionately and impermissibly conditioned the availability of the board as a tribunal on an applicant’s readiness to undertake an obligation delimited by things as indefinite as the vigor and determination of zealous opponents or the happenstance that the points at issue might turn out to be unexpectedly intricate.” (Supra, at 166.)
There is no authority upon which the Town may assess legal fees incurred to the petitioners herein.
The court has considered each of the objections raised by respondent and finds them to be without merit.
For the foregoing reasons, the instant petition is granted to the extent that petitioners shall have judgment against the respondent for return of the certificate of deposit assigned as security for the maintenance bond herein and declaring that petitioners have no further obligation for any outstanding or future bills for legal services and consultant services incurred by the respondent or the Town Planning Board.
Petitioners seek a declaratory judgment to the effect that the subdivision approval granted by the respondent Town “is not subject to revocation.” This request stems from a perceived threat contained in a letter dated December 18, 1998 from the Town Attorney. The specific language is: “The Town of La-Grange Planning Board has asked me to research whether there is any basis, under the circumstances of your subdivision, for the revocation of the outstanding subdivision approval, at least with respect to any unsold lots.”
In response to this application, counsel avers that “the Town of LaGrange has not gone so far as to threaten the petitioners with revocation of their subdivision, but has merely advised *636 that the issue is under legal scrutiny.” It is evident that the Town is threatening to revoke approval for petitioners’ subdivision. The court agrees with respondent, however, that the issue is not ripe for judicial review since respondent has not taken any action to carry through with its threat.
The remaining demands raised by petitioners are denied.