Matter of Landstein v Town of LaGrange (2018 NY Slip Op 06741)





Matter of Landstein v Town of LaGrange


2018 NY Slip Op 06741


Decided on October 10, 2018


Appellate Division, Second Department


Scheinkman, P.J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 10, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JOHN M. LEVENTHAL
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2015-10079
 (Index No. 1330/15)

[*1]In the Matter of Myles Landstein, appellant- respondent, 
v
Town of LaGrange, et al., respondents-appellants.



APPEAL by the petitioner and CROSS APPEAL by the respondents, in a proceeding pursuant to CPLR article 78, from an order and judgment (one paper) of the Supreme Court (James D. Pagones, J.), dated August 21, 2015, and entered in Dutchess County. The order and judgment, insofar as appealed from, denied that branch of the petition which was to annul a determination of the Town Board of the Town of LaGrange dated November 12, 2014, requiring the petitioner to pay $5,874 for legal consulting fees incurred by the Town of LaGrange in connection with the petitioner's applications for a special use permit and an area variance and further requiring the petitioner to maintain a minimum advance continuing escrow balance of at least $1,000 to cover the Town of LaGrange's future consulting costs in connection with the applications. The order and judgment, insofar as cross-appealed from, denied, as academic, the respondents' motion pursuant to CPLR 3211 and 7804 to dismiss the petition.



Corbally, Gartland and Rappleyea, LLP, Poughkeepsie, NY (Jon Holden Adams of counsel), for appellant-respondent.
Van DeWater & Van DeWater, LLP, Poughkeepsie, NY (Ronald Blass, Jr., of counsel), for respondents-appellants.



SCHEINKMAN, P.J.


OPINION & ORDER
i>
Introduction
The petitioner is an amateur radio hobbyist who applied for a special use permit and an area variance that would allow him to construct a radio antenna structure on his property in the Town of LaGrange. The Town incurred more than $17,000 in legal consulting fees in connection with the applications, and informed the petitioner that he was required to reimburse the Town for these fees before any determination would be made with respect to the applications. The Town subsequently, as "an accommodation to the petitioner," reduced the amount that it was demanding for previously incurred fees to the sum of $5,874, but also required the petitioner to maintain a minimum advance continuing escrow balance of at least $1,000 to cover the Town's future consulting costs in connection with the applications. We hold that, because the Town did not limit the consulting fees charged to the petitioner to those necessary to the decision-making function of the Town's Planning Board and Zoning Board of Appeals, the Town exceeded its State-granted authority by requiring payment of the consulting fees and, moreover, violated a rule promulgated by the Federal Communications Commission.
Factual and Procedural Background:
The petitioner, Myles Landstein, is the owner of a single-family home located on a [*2]3.5-acre parcel of land in the Town of LaGrange, in Dutchess County. The petitioner also owns an adjacent unimproved 1.6-acre parcel of land. In 2010, the Federal Communications Commission (hereinafter FCC) granted the petitioner a license to operate an amateur radio station, also known as a ham radio station.
On March 11, 2011, the petitioner filed an application with the Town for a special use permit to erect a 100-foot-tall "ham radio antenna structure" on his property for "personal, hobby use." Around the time of the filing of this application, the petitioner paid the Town $250 in connection with it. The application form completed by the petitioner advised applicants that "all review costs are the sole responsibility of the applicant and full payment must be received by the Town prior to receiving final approval. The Planning Board may also, at their discretion, require an escrow account to be funded at the sole expense of the applicant" (emphasis in original). Next to this advisement in the application form, the petitioner wrote: "Please advise in advance Review cost amt."
Because the Town's zoning code limits the height of towers to 35 feet, on February 7, 2012, the petitioner also applied to the Town's Zoning Board of Appeals (hereinafter ZBA) for an area variance allowing the construction of the antenna. In the variance application, the petitioner stated that, in order for his amateur radio communications to "operate effectively," the height of the antenna needed to be more than 35 feet. The application stated that the antenna structure would be 18 inches by 18 inches wide and would be "barely visible above the tree line." 
The ZBA received a number of letters from Town residents expressing concern that the antenna would be an eyesore and would interfere with other communications, such as cellular and internet services. Landstein's application was discussed at no less than 14 public ZBA meetings between March 5, 2012, and April 7, 2014. At a meeting on April 7, 2014, the petitioner agreed to modify his application to reduce the height of the proposed antenna from 100 feet to 70 feet.
Meanwhile, in a letter to the petitioner dated April 1, 2012, the Town's Administrator of Public Works wrote: "Based on the recent research and determination by the town's attorney regarding your Ham Radio application, please be advised that $7,000 . . . is due immediately in order that the town's consultants may continue with the review of your application." The letter further stated that "[n]o further review by the consultants will be done until these monies are received." In a second letter to the petitioner dated May 25, 2012, the Town's Department of Public Works stated that the petitioner's "account balance is outstanding by $4,403.90" regarding engineering, legal, and consulting fees expended by the Town in connection with the petitioner's applications. The second letter provided a copy of the Town's "accounting record" for the petitioner's "escrow account." The second letter further stated that the $7,000 requested in the first letter was "based on your interests to pursue your application. If you are no longer interested in your application, then the only amount due is the outstanding balance."
In a letter to the Town's Deputy Supervisor dated August 15, 2012, the petitioner's attorney argued that the fees charged were excessive in light of the fact that the cost of the installation of the tower was expected to be substantially less than $1,000. The petitioner's attorney further contended that, in charging the petitioner for these fees, the Town acted in excess of the authority granted to it by the State of New York and in violation of an FCC declaratory ruling known as PRB-1 (see 101 FCC2d 952).
At a meeting of the ZBA on January 6, 2014, the chairperson stated that the petitioner had still made only one initial escrow payment in the amount of $250, and that the current outstanding balance owed by the petitioner to the Town for reimbursement of its consulting fees was $15,477.36. The petitioner offered to pay an additional $500, but no more. At a meeting of the ZBA on April 7, 2014, the petitioner made a $500 escrow payment to be used for the sole purpose of hiring a consultant to review the engineering documents that the petitioner had submitted.
On June 11, 2014, the Town Board of the Town of LaGrange (hereinafter the Town Board) passed a resolution providing that "[a]s an accommodation to [the petitioner] under PRB-1, and given the implicit request of [the petitioner], the Town Board will review and audit the reasonableness and necessity of the consultant expenses incurred by the Town in reviewing" the petitioner's applications. The record contains numerous invoices totaling more than $17,000 for services provided to the Town by the law firm of Van DeWater & Van DeWater, LLP (hereinafter the Van DeWater firm) in connection with the petitioner's applications. These invoices included charges for attendance at ZBA meetings, travel time to ZBA meetings, telephone calls with members of the ZBA regarding the petitioner's applications, conferences between attorneys within the firm, [*3]drafting ZBA meeting agendas, review of the petitioner's file in anticipation of attendance at ZBA meetings, and legal research.
The November 12, 2014, Determination at Issue in this Proceeding:
On November 12, 2014, the Town Board passed the resolution that is the subject of this proceeding. In a whereas clause, the resolution provided that the Town Board had
"received from the Town's legal counsel a potential method for reducing [the petitioner's] obligation for legal consultant fees, as and for a reasonable accommodation, from the sum of $17,481.11 to the sum of $5,874 through application of the following principles:
"a) only legal services directly devoted to advising or appearing before the Town's agencies would be passed on to the [petitioner];
"b) to the exclusion of such legal services as attorney research regarding PRB-1 and its case law, attorney preparation, attorney consultations with legal counsel for the [petitioner] or for neighbors, attorney efforts to locate experts for the ZBA in the areas of radio frequency transmission and visual impact study; and attorney advice to town departments on the subject other than the ZBA or Planning Board."
Attached to the resolution were copies of invoices sent by the Van DeWater firm to the Town, with the majority of the charges crossed out. Charges that were not crossed out included charges for attendance at ZBA meetings, including travel time, discussions with members of the ZBA regarding meeting agenda, preparation of letters to ZBA members regarding "status and procedures" for ZBA meetings, review of the file in anticipation of attendance at ZBA meetings, meetings between attorneys within the Van DeWater firm regarding who would attend the ZBA meetings, and conference calls with members of the ZBA regarding the petitioner's applications and controlling law.
In its resolution, the Town Board provided:
"As a reasonable accommodation to the [petitioner], the Town Board offers to the [petitioner] a reduction of his responsibility under 240-88 of the Town Code for legal consultant costs incurred by the Town and covering the period through May of 2014 from the sum of $17,481.11 to the reduced sum of $5,874, based on application of the criteria set forth above and as reflected in the modified legal billing statements attached hereto."
The resolution further provided:
"With respect to consultant charges following the billing period of May of 2014, and as a reasonable accommodation to the [petitioner], the Town Board offers to the [petitioner] a reduction of his responsibility under 240-88 of the Town Code for legal consultant costs incurred by the Town consistent with the same criteria."
Finally, the resolution provided:
"This reasonable accommodation is conditioned that future proceedings before town agencies shall not proceed unless (a) the above sum of $5,874 is paid by the [petitioner], and (b) the [petitioner] maintains a minimum advance continuing escrow balance of not less than $1,000 to cover the Town's consulting costs until all determinations by agencies of the Town are completed."
The Instant Proceeding Pursuant to CPLR Article 78:
On March 9, 2015, the petitioner commenced this proceeding, inter alia, to annul the Town Board's determination dated November 12, 2014, requiring the petitioner to pay the $5,874 [*4]for legal consulting costs incurred by the Town and to maintain a minimum advance continuing escrow balance of at least $1,000 to cover future legal consulting costs incurred by the Town in connection with the applications. The respondents moved pursuant to CPLR 3211 and 7804 to dismiss the petition.
Order and Judgment Appealed From:
In an order and judgment (one paper) dated August 21, 2015, the Supreme Court, among other things, denied that branch of the petition which was to annul the determination dated November 12, 2014, and denied the respondents' motion to dismiss the petition as academic. The petitioner appeals, as limited by his brief, from so much of the order and judgment as denied that branch of the petition which was to annul the Town Board's determination dated November 12, 2014. The respondents cross-appeal from so much of the order and judgment as denied, as academic, their motion to dismiss the petition.
The Cross Appeal Must Be Dismissed as Abandoned:
The cross appeal must be dismissed as abandoned, as the respondents' brief does not request reversal of any portion of the order and judgment from which the cross appeal was taken (see Swift v Broadway Neon Sign Corp., 137 AD3d 893, 894; Barrett v Dennis Lounsbury Bldrs., Inc., 135 AD3d 796).
The Town Exceeded Its State-Granted Authority By Requiring Payment of the Subject Fees:
Town Code of the Town of LaGrange § 240-88(A) provides, in part: "Where the Town Board, Planning Board or the Zoning Board of Appeals uses the services of private engineers, attorneys or other consultants for purposes of engineering, scientific, land use planning, environmental, legal or similar professional reviews of the adequacy or substantive aspects of applications, or of issues raised during the course of review of applications, for special permit approvals [or] use or area variances, . . . the applicant and landowner, if different, shall be jointly and severally responsible for payment of all the reasonable and necessary costs incurred by the Town for such services." Town Code of the Town of LaGrange § 240-88(B) further provides, in part: "The Town Board, Planning Board, or Zoning Board of Appeals may require advance periodic monetary deposits to be held by the Town of LaGrange on account of the applicant or landowner to secure the reimbursement of the Town's consultant expenses."
In Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor (40 NY2d 158), the plaintiff sought and ultimately obtained a variance and special use permit for property it had purchased in the Village of Roslyn Harbor (see id. at 160). A Village ordinance required applicants for variances and special use permits to pay, in addition to a set fee of $60 for the variance and $50 for the permit, "the actual costs incurred by the [ZBA] in passing on the matter," including legal fees (id.). Pursuant to the ordinance, the Village required the plaintiff to pay $3,671.50, including $2,322.20 for legal fees (see id. at 161).
The Court of Appeals held that, although Village Law § 7-712(1) provided villages with the implied delegation of power to enact fees necessary to carry out the functions of ZBAs, the "open-ended, indeed unlimited, nature of the fees" authorized by the Village ordinance "makes the ordinance vulnerable to attack on the ground that it overreaches the State statute's implied grant of power to the village" (Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d at 163). The Court of Appeals stated that "when the power to enact fees is to be implied," there must be a limitation on this power in that the "fees charged must be reasonably necessary to the accomplishment of the statutory command" (id. at 163). The Court of Appeals further stated that the fees "should be assessed or estimated on the basis of reliable factual studies or statistics" and that the "yardstick by which the reasonableness of charges made to an applicant in an individual case may be evaluated is the experience of the local government in cases of the same type" (id. [internal quotation marks omitted]). The Court of Appeals explained:
"Without the safeguard of a requirement that fees bear a relation to average costs, a board would be free to incur, in the individual case, not only necessary costs but also any which it, in its untrammeled discretion, might think desirable or convenient, no matter how oppressive or discouraging they might in fact be for applicants" (id.).
In affirming a judgment of the Supreme Court that disallowed the charges for legal fees, the Court of Appeals stated:
"[The Village's] choice of counsel, the extent to which it chose to [*5]rely on their services, indeed whether to engage them at all, rested entirely with the board alone. Of course the board was free, and perhaps wise, to exercise these prerogatives, but the imposition of their cost on the plaintiff was something else again. It would have disproportionately and impermissibly conditioned the availability of the board as a tribunal on an applicant's readiness to undertake an obligation delimited by things as indefinite as the vigor and determination of zealous opponents or the happenstance that the points at issue might turn out to be unexpectedly intricate.
"Thus, since the ordinance permitted the charges for the actual cost of these items to the applicant without so much as a point of reference grounded in data from similar cases, it is, to say the least, impossible to assess whether any or all of the charges so incurred were necessary to the accomplishment of the board's decision-making function or merely convenient to it. For these reasons, they must be said to be beyond the limitations of the power delegated under the statute" (id. at 166).
The principles of Jewish Reconstructionist have been applied to municipalities generally, including towns in particular (see Kencar Assoc., LLC v Town of Kent, 27 AD3d 423).
Unlike the ordinance at issue in Jewish Reconstructionist, Town Code of the Town of LaGrange § 240-88 appropriately provides that only reasonable and necessary consulting costs shall be passed on to applicants, and provides for audit procedures to review whether the expenses incurred were reasonable and necessarily incurred (see Town Code of the Town of LaGrange § 240-88[A], [B], [C], [D]). However, while Town Code of the Town of LaGrange § 240-88 appropriately defines "reasonable" as bearing a reasonable relationship to the customary fee charged by consultants within the region in connection with comparable applications for land use or development (Town Code of the Town of LaGrange § 240-88), it defines "necessary" much more broadly than the meaning ascribed by the Court of Appeals in Jewish Reconstructionist. The definition of consulting expenses "necessarily incurred" in Town Code of the Town of LaGrange § 240-88(C) includes, among other expenses, expenses charged by an attorney for services rendered in order "to assist in the protection or promotion of the health, safety or welfare of the Town or its residents; to assist in the protection of public or private property or the environment from potential damage that otherwise may be caused by the proposed land use or development . . .; to assure or assist in compliance with laws, regulations, standards or codes which govern land use and development; to assure or assist in the orderly development and sound planning of a land use or development; . . . or to promote such other interests that the Town may specify as relevant" (Town Code of the Town of LaGrange § 240-88[c]). The plain meaning of this definition, and especially the "to assist" language and the open-ended invitation to use the assistance of counsel to advance any interest deemed to be relevant, would include expenses that the Town would deem merely convenient to its objectives, as opposed to necessary (see Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d at 163, 166).
Further, the record in this case demonstrates that, like the Village in Jewish Reconstructionist, the Town initially directed the petitioner to pay all of the legal consulting fees that it, in its sole discretion, decided to incur in connection with the petitioner's applications for site plan approval and for a variance. Although the Town Board later, as a "reasonable accommodation" to the petitioner, reduced the amount it billed the petitioner for the Town's prior legal consulting expenses from $17,481.11 to $5,874, it is undisputed that it did not do so with reference to any data regarding similar cases. Instead, the legal consultants hired by the Town simply went through the billing statements and crossed out charges for items that the consultants deemed not "directly devoted to advising or appearing before the Town's agencies."
Since the Town did not limit the legal consulting fees charged to the petitioner to those reasonable and necessary to the decision-making function of the Planning Board and the ZBA, as determined by reference to data or experience derived by this or comparable municipalities in similar cases, the Town exceeded its State-granted authority by requiring payment of them (see Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d at [*6]163-166; Matter of Harriman Estates at Aquebogue, LLC v Town of Riverhead, 151 AD3d 854, 856; Matter of Valentino v County of Tompkins, 45 AD3d 1235, 1237; ATM One v Incorporated Vil. of Freeport, 276 AD2d 573, 574; Cimato Bros. v Town of Pendleton, 270 AD2d 879, 879-880; Cimato Bros. v Town of Pendleton, 237 AD2d 883, 884-885). The record indicates that the Town imposed liability without making an attempt to determine whether its charges would be so extensive as to discourage applicants from pursuing claims for relief and without seeking to avoid "idiosyncratic or atypical charges" by ascertaining the prevailing practices adopted by other, comparable municipalities over the course of their experience in dealing with similar applications (see Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d at 164).
The Town also acted in excess of its State-granted authority by directing the petitioner to maintain a minimum advance continuing escrow balance of at least $1,000 to cover the Town's future consulting costs in connection with the applications. This would require the petitioner to continually make payments into the escrow account to replenish it as the Town uses the funds for consulting expenses, without any review as to whether the expenses are necessary by reference to data or experience from similar cases (cf. Twin Lakes Dev. Corp. v Town of Monroe, 1 NY3d 98, 107-108 [holding that the plaintiff failed to establish that its due process rights were violated by a requirement that it deposit a single escrow with the Town Clerk to cover the costs incurred by the Town in processing and reviewing the plaintiff's application for a subdivision permit where the record established that the Planning Board audited vouchers submitted by consultants in the first instance and rejected any excessive or unnecessary charge, and where the plaintiff did not request an audit of the fees or allege that the fees were unreasonable]). The imposition of a requirement that the petitioner maintain a perpetually regenerating positive escrow balance bespeaks an impermissible effort to guarantee that the community's taxpayers bear no share of the expense of the maintained governmental function that the Town was charged to carry out (see Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn Harbor, 40 NY2d at 165). The escrow direction made by the Town would permit unfettered spending by consultants without regard to the nature of the application and the burden placed upon the applicant, the necessity for consultants in the first instance, and the reasonableness of consultant charges in the light of comparable charges for similar services in connection with similar applications.
In Requiring Payment of the Subject Fees, the Town Also Violated a Federal Regulation:
In 1985, the FCC issued a declaratory ruling entitled Matter of Federal preemption of state and local regulations pertaining to Amateur radio facilities, also known as PRB-1, in response to a request that it "delineate the limitations of local zoning and other local and state regulatory authority over Federally-licensed radio facilities" (101 FCC2d 952). In PRB-1, the FCC declared that "local regulations which involve placement, screening, or height of antennas based on health, safety, or aesthetic considerations must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation to accomplish the local authority's legitimate purpose" (id. at 960). This declaration was later codified as a regulation at 47 CFR 97.15(b).
In an order dated November 19, 1999, the FCC denied a petition requesting that the FCC clarify its preemptive intent with respect to "overly burdensome conditions and excessive costs levied by a local authority in connection with . . . issuance of antenna permits" (Matter of Modification & Clarification of Policies & Procedures Governing Siting & Maintenance of Amateur Radio Antennas & Support Structures, & Amendment of Section 97.15 of the Commission's Rules Governing the Amateur Radio Serv., 14 FCCR 19413, 19416). In doing so, the FCC concluded that the "current standards in PRB-1 of reasonable accommodation and minimum practicable regulation are sufficiently specific to cover any concerns related to unreasonable fees or onerous conditions. With these guidelines in place, an amateur operator may apprise a zoning authority that a permit fee is too high, and therefore unreasonable, or that a condition is more than minimum regulation, and, therefore, impracticable to comply with" (Matter of Modification & Clarification of Policies & Procedures Governing Siting & Maintenance of Amateur Radio Antennas & Support Structures, & Amendment of Section 97.15 of the Commission's Rules Governing the Amateur Radio Serv., 15 FCCR 22151, 22154).
"Federal regulations have no less preemptive effect than federal statutes" (Capital Cities Cable, Inc. v Crisp, 467 US 691, 699 [internal quotation marks omitted]; see Guice v Charles Schwab & Co., 89 NY2d 31, 39).
Here, as discussed above, the Town did not limit the legal consulting fees charged [*7]to the petitioner to those necessary to the decision-making function of the Planning Board and the ZBA with respect to health, safety, or aesthetic considerations (see Freeman v Burlington Broadcasters, Inc., 204 F3d 311, 319-326 [2d Cir] [field of radio frequency interference preempted by federal law, thus prohibiting the voiding of a municipal permit based on failure to comply with interference abatement requirements of permit]). As such, the Town's action went beyond the "minimum practicable regulation to accomplish the state or local authority's legitimate purpose" (47 CFR 97.15[b]). Thus, in requiring the petitioner to pay the subject fees, the Town's actions not only exceeded the authority granted to it by the State, but also were preempted by federal law (see Pentel v City of Mendota Hgts., 13 F3d 1261, 1263-1264 [8th Cir]; Palmer v City of Saratoga Springs, 180 F Supp 2d 379, 384-386 [ND NY]). Just as the Town may not use its land use regulatory authority to construct "hoop after hoop" for the petitioner to jump through in order to erect his radio antenna tower (Palmer v City of Saratoga Springs, 180 F Supp 2d at 385), the Town cannot impose unreasonable expenses so as to create an insurmountable financial barrier to the pursuit of the project. In this context, not only must the consultant fees be reasonable in amount, but the underlying services must be necessarily related to those municipal regulatory functions which are not preempted by federal law.
Conclusion:
For the foregoing reasons, the determination of the Town Board dated November 12, 2014, requiring the petitioner to pay $5,874 for the legal consulting fees incurred by the Town in connection with the petitioner's site plan approval and variance applications and requiring the petitioner to maintain a minimum advance continuing escrow balance of at least $1,000 to cover the Town's future consulting costs in connection with the applications, was affected by errors of law (see CPLR 7803[3]; Matter of Jourdain v New York State Div. of Hous. & Community Renewal, 159 AD3d 41, 49; Matter of 149 Glen St. Corp. v Jefferson, 140 AD3d 742, 743). We note that our decision does not preclude the Town from seeking recovery from the petitioner pursuant to Town Code of the Town of LaGrange § 240-88(A) for consulting fees it has incurred or will incur in connection with the petitioner's applications after conducting a further review of the fees to determine if they are necessary to the accomplishment of the Town's decision-making function.
In light of our determination, we need not reach the petitioner's contention that the Town is collaterally estopped from requiring the petitioner to pay legal consulting fees incurred by the Town in connection with the petitioner's applications.
Accordingly, the cross appeal is dismissed as abandoned, the order and judgment is reversed insofar as appealed from, on the law, and that branch of the petition which was to annul the determination of the Town Board of the Town of LaGrange dated November 12, 2014, requiring the petitioner to pay $5,874 for legal consulting fees incurred by the Town of LaGrange in connection with the petitioner's applications for a special use permit and an area variance and further requiring the petitioner to maintain a minimum advance continuing escrow balance of at least $1,000 to cover the Town's future legal consulting costs in connection with the applications, is granted.
LEVENTHAL, MILLER and BRATHWAITE NELSON, JJ., concur.
ORDERED that the cross appeal is dismissed as abandoned; and it is further,
ORDERED that the order and judgment is reversed insofar as appealed from, on the law, and that branch of the petition which was to annul the determination of the Town Board of the Town of LaGrange dated November 12, 2014, requiring the petitioner to pay $5,874 for legal consulting fees incurred by the Town of LaGrange in connection with the petitioner's applications for a special use permit and an area variance and further requiring the petitioner to maintain a minimum advance continuing escrow balance of at least $1,000 to cover the Town's future legal consulting costs in connection with the applications, is granted; and it is further,
ORDERED that one bill of costs is awarded to the petitioner.
ENTER:
Aprilanne Agostino
Clerk of the Court